*First Judicial District.*

## In the Quarter Sessions of Philadelphia.

### COMMONWEALTH *v.* KEENAN.

1. The Commonwealth is allowed to stand aside jurors without assigning cause of challenge.

2. An indictment under the act of May 3, 1871, should charge that the offence was committed in the Twenty-second ward. An indictment general in its terms is not sufficient under this act.

Opinion delivered December 6, 1873, by

ALLISON, P. J. The defendant was convicted of selling liquor without license. He moved for a new trial, first, because the commonwealth was allowed to stand aside jurors, without assigning cause of challenge. That this right was recognized in England, is clearly shown by Judge Ludlow, in the opinion of the court, in the case of Morrow and Dougherty, 3 Brewster 402. The defendants were indicted for a felony, and

the conclusion reached by the court upon a thorough review of the law of England and of Pennsylvania, on this point is, that at least, in felonies not capital, it is the right of the commonwealth to stand aside jurors, without assigning cause, until the panel is exhausted. The qualification of the principle, by the words *at least*, results, not from anything that can be extracted from the authorities cited in support of the conclusion of the court, but because it was not necessary in the case then under consideration, to give to the principle a broader application than was required by the facts upon which the question to be decided rested. In support of the general principle are cited 2 Hale's Pl. Cr. 271; 2 Hawkin's Pl. Cr. chap. 43, sec. 10.

At common law, it was the right of the government to challenge peremptorily any number of jurors, without first showing cause, until the passage of the statute of 33 Edward I., stat. 4; Rob. Digest 338.

But in the construction of this statute, it has been held, that cause of challenges on the part of the prosecution, need not be shown, till the whole of the panel is gone through, and it should appear that a full jury could not be had, without the person so challenged. Co. Lit. 156; Regina *v*. Frost, 9 C. & P. 136. The language of the statute of Edward is, "That from henceforth, notwithstanding it be alleged by them, that sue for the king, that the jurors of those inquests or some of them, are not indifferent for the king, yet such inquest shall not remain untaken for that cause, but if they that sue for the king will challenge any of those jurors, they shall assign of their challenge a cause certain, and the truth of the same challenge shall be enquired of according to the custom of the court."

In this State the right to challenge is regulated by statute. In all cases of treason, misprison of treason, murder, manslaughter, concealing the death of a bastard child, rape, robbery, burglary, sodomy, malicious maiming, and arson, the accused is entitled to twenty, and on the trial of all other indictments to four peremptory challenges. In all cases, the commonwealth have the right to challenge peremptorily four of the panel of jurors. Upon the subject of standing aside jurors we have never legislated.

The practice of standing aside jurors by the commonwealth, without presently assigning cause, which was in force in England, has been exercised in this State, and recognized by the highest judicial authority, as an indulgence granted to the commonwealth for the furtherance of justice.

When, in consequence of peremptory challenge by the defendant, and the jurymen ordered to stand aside by the request of the prosecutor, a full jury cannot be obtained, then the proper course is to call over the whole panel again, only omitting those who have been challenged peremptorily. Rosc. C. L. 197, sixth American edition of 1866.

Blackstone, vol. 4, 353, says : "It is held the king need not assign his cause of challenge till the panel is gone through, and unless there cannot be a full jury without the persons so challenged."

In a note to Sharswood's Blackstone, it is stated to be the law, that the practice is the same, both in trials for misdemeanors and for capital offences. This statement is founded on a decision in 3 Har. St. Tr. 319, in the case of Lord Gray and others, who were tried for a misdemeanor.

It is true that this is but a ruling of the Lord Chief Justice upon the trial, and does not seem to have been presented subsequently to the Judges in banc for their opinion, and for this reason the authority of this case was earnestly denied on the argument of this motion. But we rather incline to the opinion, that this decision was not questioned, because it was based on the law of England so well established, that there was no room for doubt or controversy. The books will be searched in vain for such a qualification of the principle as that now contended for by the defendant. In the breadth with which it is everywhere stated, it is applicable alike to all classes of indictable offences ; there is no distinction made between felonies and misdemeanors.

The general principle is stated in Wharton's Crim., L., 2 edit., 330, thus : At common law the government has no peremptory challenges, but unlike the defendant, it is not required to show cause until after the panel is exhausted, having the power of setting aside individual jurors till that period when, if the jury box be not filled, the set aside jurors will be severally called, and, unless adequate cause be shown against them, they will be chosen. Such still is the practice in the federal courts, and in such of the States as have not in this respect superseded the common law by statutes. In Pennsylvania we have no statute which, by changing the common law in this respect, takes from the commonwealth the right of standing aside jurors. In Commonwealth *v.* Joliff, 7 Watts 585, where the prisoner was indicted for arson, it was recognized as a right belonging to the State. The reason is assigned, that the juror may be partial by reason of being bound to the prisoner by feeling, or even confederated with him in guilt, and yet there may be no proofs to sustain a challenge for these reasons.

It is true that in that case the defendant had twenty peremptory challenges, and the right of the State might have been maintained on the ground that it was necessary to secure to the commonwealth a fair trial. But it was not distinguished from the class of cases in which to challenge peremptorily is reduced to a less number than twenty, and the general principle is maintained, irrespective of the character of the crime for which a defendant may be placed on trial ; that is an indulgence allowed to the State, which can deprive the prisoner of no advantage which it is the policy of the law to allow him, and as there is nothing in the legis-

lation of this State to deprive the commonwealth of it, being indispensable to criminal justice, it ought to be allowed. Every reason which applies to the exercise of this privilege in a case of felony, applies with equal, if not greater force, to a case of misdemeanor. It was given to the government in England not only in felonies of murder, but where, in many instances, the penalty of death was attached to the commission of other felonies, and if it was not set aside in *favorem vita* of a prisoner, why should it be where less serious consequences follow a conviction? And as with us the punishment for misdemeanor is in general less than for felonies, the grade of crime ranking lower, and if, as was decided by this court in the case of Morrow and Dougherty, it applied to felonies not capital, why should it be taken from the commonwealth in cases of misdemeanor? We know of no sufficient reason for such a conclusion.

The right to stand aside jurors was recognized in Warner *v.* Commonwealth, 1 Wright 45, and in Hartzell *v.* Commonwealth, 4 Wright 462, which were cases of felonious homicide.

The second material question raised by the defendant is based on the fact that the indictment does not charge that the offence was committed in the Twenty-second ward. The indictment is general in its terms, and states that the defendant, within the jurisdiction of this court, did sell and retail, and cause to be sold and retailed, less than one quart of rum, wine, brandy, and other spirituous and vinous liquors, and less than one gallon of malt liquor, &c., contrary to the form of the act of assembly, and against the peace and dignity of the commonwealth of Pennsylvania. This is the general form of indictment, which for over a century has been in use in this State, and has always, when questioned, been sustained as constituting a legal charge of keeping a tippling house, or selling liquor without license.

It was framed upon the return of the constable under the act of April 5, 1860, which provides, that if any person returned as aforesaid, shall be found guilty, he may be punished as provided in the act. This act is special, and applies only to the city of Philadelphia, and is not repealed by the general law of the 22d of March, 1867.

The act of May 3, 1871, called the Local Option Act of the Twenty-second ward, makes it an offence to sell intoxicating liquors within said ward without a license; to this extent it is a re-enactment of the law of April, 1860, but is restricted by its terms to the ward. It prescribes a penalty wholly distinct from that contained in the act of 1860; it provides that if any person shall be convicted of selling liquor within the ward without license, he shall be sentenced to pay a fine of $50 and to a confinement in the county jail or house of correction for six months for the first offence, and for the second and each subsequent offence, to a fine of $100 and imprisonment for one year.

The act of 1860 says, that for a conviction under that act the offender shall be fined in a sum not exceeding $200 and imprisoned for a term not more than two years. This, it appears to us, makes the selling of liquor in the Twenty-second ward without a license a new and distinct offence. Under the act of 1860, within the limits therein prescribed, the punishment is discretionary, while under the act of 1871, the amount of punishment is fixed, from which there can be no departure. And while the punishment under the act of 1870, when imposed by the court, may be less than that fixed by the act of 1871, it may, in the discretion of the judge imposing sentence, greatly exceed the penalties set forth in the act of 1871.

Then, again, under the later act, a distinction is made in the punishment for a first and any subsequent offence, being doubled both as to fine and imprisonment, which is wholly wanting in the act of 1860. We are, for these reasons, compelled to hold that the conviction cannot be sustained under the form of indictment upon which the defendant was placed upon trial. This conviction could not be pleaded in bar of an indictment charging the defendant with having violated the act of 1871, by selling liquor in the Twenty-second ward without a license. This is the offence for which the defendant was tried, and of which he was convicted. The evidence showed that he resided within the ward, and that the sale of liquor was at the place at which he resided ; and as we are required to sentence upon the bill and not upon the evidence, it follows, as a necessary consequence that, as the bill does not charge an offence under the act of 1871, or that the sale took place in the Twenty-second ward, the verdict must be set aside.

Rule for a new trial is made absolute.

*Lewis D. Vail* and *Geo. D. Stroud,* Esqs., for the commonwealth ; *James H. Heverin* and *Jos. A. Bonham,* Esqs., for the defendant.