## Haines et al. *versus* Commonwealth.

100  317
128  507
100  317
140  560

100       317
f  20 SC ² 54
100       317
e 23 SC ¹499

1. The right of the prosecuting officer for the Commonwealth to " stand aside jurors " during the empaneling of a jury, without assigning cause for challenge, exists in cases of misdemeanor as well as in felonies.

2. Where, in criminal cases, it is desired to take advantage of alleged errors occurring in the course of the trial by writ of error, the proper course is to except to the error at the time it is made, to have the judge trying the cause, note the exception, and then or subsequently, within such reasonable time as the rules of court may prescribe, to have said judge set his seal thereto before the record is removed to the supreme court.

March 29th and 30th 1882.    Before MERCUR, GORDON, PAXSON, TRUNKEY, STERRETT and GREEN, JJ.    SHARSWOOD, C. J., absent.

ERROR to the Court of Quarter Sessions of *Philadelphia county:*    Of January Term 1881, No. 263.

Indictment against Charles C. Haines, William F. Miskey, Jr., and Henry C. Clement, for conspiracy.

The indictment came on for trial February 3d 1881, before FINLETTER, J., and a jury, and a verdict of guilty was rendered February 9th 1881.    A motion for a new trial and in arrest of judgment was overruled by the court, and on March 5th 1881, the defendants were sentenced each to pay a fine of $500, and to undergo imprisonment in solitary confinement, at labor, in the state penitentiary for the Eastern District of Pennsylvania, and to pay the costs of prosecution.

A special allocatur being obtained, the defendants took this writ of error November 22d 1881.    In January 1882, the defendants presented a petition to the supreme court praying for a writ under the Statute of Westminster 2d, directed to the Hon. THOMAS K. FINLETTER, commanding him to seal certain bills of exception alleged to have been taken by the defendants during the trial, or show cause, &c.    The proceedings under said petition, with the judgment and opinion of the court, are reported in 3 Outerbridge, page 410.    The exceptions were not sealed.

On January 9th 1882, a certiorari was allowed by this court, directing that certain portions of the record remaining in the quarter sessions be sent up to this court, inter alia : " (e) Certain entries of the standing aside of Levi King and other jurors in said case, and of the overruling of a challenge to Peter Kronaburger, called as a juror in said case."    The said matters of record were thereupon certified to this court, the entries in question being as follows :

[Haines *v.* Commonwealth.]

## DOCKET ENTRIES.

COMMONWEALTH OF
PENNSYLVANIA,
*vs.*
CHARLES C. HAINES,
WILLIAM F. MISKEY,
HENRY G. CLEMENT.

Quarter Sessions of the Peace,
County of Philadelphia.
April Sessions, 1880.   No. 194.
" Conspiracy."

December 6th 1881. Present, Hon. Thos. R. Elcock. Rule to show cause why the record should not be perfected by adding thereto the entries as to the challenging and standing aside of the jurors, and as to the motion to poll the jury filed.

Same day affidavit of defendants in support of said rule filed.

December 8th 1881.   Present, Hon. Thos. R. Elcock, rule to take depositions in support of above rule filed.

December 23d 1881.   Present, Hon. Thos. R. Elcock.   It is agreed in open court by the District Attorney, on behalf of the Commonwealth, and by said defendants, that upon the trial of this cause, the following persons, W. Standascher, C. G. Young, Levi King, J. R. Caldwell, Marcus Haugh, William Hance, and C. Getzinger, who were summoned as jurors in said court were duly called upon said trial, appeared and answered to their names, and were by the Commonwealth stood aside, without assigning any reason therefor: to this proceeding the defendants objected and the objection was overruled by the court; and it is further agreed that another juror whose name appeared upon the venire as Peter Kronaburger was sworn sur voire dire, and challenged for cause by the defendants, and the challenge overruled by the court, and the person appearing in answer to said name was duly sworn and served as a juror in said cause.

Same day, Hon. Thos. R. Elcock, still present, rule to show cause why the record should not be perfected, argued and held under advisement.

December 30th 1881.   Present, Hon. Thos. R. Elcock.   Rule to show cause why the record should not be perfected, made absolute as to the standing aside and challenge of jurors, and discharged as to the balance of said rule.

And now, to wit, same day, Hon. Thos. R. Elcock still present, the court order and decree that the clerk of the court is directed to enter upon the record of this cause, as of date February 3d. 1881, on the calling of the jury, the following persons, W. Standascher, C. G. Young, Levi King, J. R. Caldwell, Marcus Haugh, William Hance, and C. Geitzinger, summoned as jurors, were called and answered to their names, and were, by the District Attorney, for the Commonwealth, stood aside, without

[Haines v. Commonwealth.]

assigning reasons therefor : and to this defendants objected, and the objection was overruled by the court. And another juror, whose name appeared upon the venire as Peter Kronaburger, was challenged for cause, and said challenge overruled by the court, and the person appearing in answer to said name was sworn as a juror.

Among the assignments of error filed was the following, to which the argument in this court was confined :

1. Levi King and other jurors on the regular panel being duly summoned and called as jurors in said case, and answering to their names, were set aside by the district attorney, without challenge or assigning any reason, and were prevented from taking their seats in the jury box, contrary to the defendants' objection.

*F. Carroll Brewster* and *Lewis C. Cassidy* (with them *James H. Heverin* and *William B. Mann*) for the plaintiffs in error.—The right of the prosecuting officer to stand aside jurors was never conferred by common law. When the statute of 33 Edw. I. took from the king the right to unlimited peremptory challenges, the courts, in construing that statute, established the practice that the king need not show cause of challenge until the whole panel be gone through with, and hence the expression "let the juror stand aside." It originally applied only after challenge. And this practice in England was always confined to cases of treason, or capital cases prosecuted for the king in fact as well as in name, and was never extended to cases of misdemeanor, prosecuted by private counsel in private interests, though in the king's name. All the statutes in England and in this country giving the right of challenge have been intended for the protection of the accused, and since the Commonwealth has been given an equal number of challenges with the accused in cases of misdemeanor, no reason remains for continuing the privilege of the prosecution to stand aside jurors without limit. If permitted it is an instrument of oppression, by which the prosecuting officer can virtually select from the panel the particular men he desires to try the case. This was forcibly illustrated in Keenan's case, 30 Leg. Int. 416, the solitary case where standing aside was permitted in a misdemeanor, subject, however, to the question reserved as to its legality. That was a prosecution for selling liquor, under a local option law, whereby it was prohibited in one ward only of Philadelphia. Public sentiment was all against convictions; but the district attorney, being determined to convict, and acting under the above stated ruling, stood aside all but sixteen of the panel; the defendant challenged four, and that left twelve prohibitionists, who immediately convicted—and the court set

aside the verdict on another ground. Keenan's case was a common pleas case, and not binding on this court; but any argument drawn from it in favor of standing aside in misde-- meanor cases is answered in United States *v.* Douglass, 2 Blatch. C. C. Rep. 214, and United States *v.* Butler, 1 Hughes 457, in the latter of which it is expressly said that the right to stand aside ceases to exist when the prosecution has the right of peremptory challenge.

The cases found in the books, with the exception of King *v.* Lord Grey, 9 State Trials 127, and Keenan's Case, supra, were cases of felony, not misdemeanor. United States *v.* Wilson and Porter, 1 Baldwin 78, was an indictment for robbing the mails and putting in jeopardy the life of the carrier. Marchant's Case, 12 Wheaton 480, was an indictment for a capital offence, the only point decided being as to the right of the defendants to a separate trial. Commonwealth *v.* Lesher, 17 S. & R. 155, was an indictment for murder. In Commonwealth *v.* Jolliffe, 7 Watts 585, the offence charged was a felony —arson. Commonwealth *v.* Marra, 3 Brewster 402, was ac ase of felony—assault with intent to kill. Warren *v.* Commonwealth, 1 Wr. 46, and Jewell *v.* Commonwealth, 10 Harris 94, were murder cases. The English cases are, with two exceptions, cases of felony, and Mr. Scott in his argument in 26 State Trials 1231, shows that those two are not authority.

*George S. Graham*, for the defendant in error.—It is not to be denied that in England, since the statute of 33 Edw. I. the practice of standing aside jurors has been recognized in misdemeanors as well as in felonies : 2 Hargrave's State Trials ; 4 Black. Comm. 352. That statute is in force in Pennsylvania (Robert's Dig. 339) and our practice under it followed the English practice. Our subsequent statutes of 1809, 1813, 1834 and 1860, have not affected the old law in this respect : Warren *v.* Commonwealth, 1 Wr. 45 ; Zell *v.* Commonwealth, 13 Norris 258 ; Commonwealth *v.* Jolliffe, 7 Watts 585. It is argued that since the Commonwealth has by statute a right of four challenges the reason of the practice has ceased. But, I answer, before the privilege fails, you must restore what existed before, viz. : the right to unlimited challenges. Giving the Commonwealth an equal number of challenges with the defendant does not effect equality. The defendant requires but a single dissenting juror to prevent conviction, while the Commonwealth must obtain the assent of all the twelve. The same reasons for the practice of standing aside exist in cases of misdemeanor as in felonies. The crime of "jury fixing" is easy to commit and difficult to discover. A prosecuting officer may have strong reasons to suspect a number of the panel to be improper persons to serve

[Haines *v*. Commonwealth.]

on the jury, and yet not be warranted in exhausting his peremptory challenges.    Under such circumstances why should he be prevented from postponing the service of such men, at least until it appears that they are necessary to make up a jury?    No injury to the accused can arise thereby.    The policy of the law as well as the statutes and decisions, favor the right contended for in misdemeanors as well as in felonies.

Mr. Justice Sterrett delivered the opinion of the court, October 2d 1882.

For reasons given at length in the opinion of the Chief Justice, 3 Outerbridge 410, the plaintiffs in error failed to obtain bills of exception to support the numerous assignments of error on which they intended to rely for a reversal of the judgment in this case.    In the absence of the exceptions referred to in their application for the special writ under the Statute of Westminster,  there is nothing in the record before us, on which to base any of the specifications except, perhaps the first.    This fact was virtually conceded by the learned counsel, and hence their oral argument was directed solely to the question involved in the first specification, viz:    Whether the Commonwealth, during the progress of empaneling the jury, had a right to stand aside jurors without assigning any cause of challenge?    It is contended, however, on the part of the Commonwealth, that the record does not properly raise even that question; that the ruling of the court permitting the district attorney to stand aside Levi King and other jurors was not excepted to, nor was any bill of exception thereto ever sealed; and that this omission has not been supplied by the alleged amendment of the record allowed several months thereafter by one of the judges who was not present during the trial.

At common law bills of exception in criminal cases were not allowed, nor did the evidence, rulings and charge of the court form any part of the record.    The right of the defendant to take exceptions in such cases and bring them here for review depends entirely on the Acts of Assembly referred to in the opinion above cited.    The extent of the right thus conferred, the time and manner in which it should be exercised, etc., are there clearly pointed out.    If an exception to the ruling of the court is desired, the judge presiding at the trial should be requested to note it, and then, or within such reasonable time as the rules of court may prescribe, seal the bill in due form.    It is the personal right, as well as the duty of the trial judge, to seal a bill to all exceptions properly taken to his rulings during the course of the trial.    If he neglects or refuses to do so, the party aggrieved is not without remedy.    When objections are overruled and no exception is taken, the presumption is that the

[Haines *v.* Commonwealth.]

ruling is acquiesced in.    If an exception be taken the Commonwealth may waive the point in dispute rather than assume the risk of sustaining it.    Hence it is that objections intended to be relied on should not only be noted, but an exception should be promptly taken.    It devolves on the party complaining to show that he excepted at the time and thus gave the court and opposing counsel an opportunity of correcting the alleged error; Fife *v.* Commonwealth, 5 Casey 439.    The orderly administration of justice as well as fairness to both court and opposing counsel requires that the practice thus indicated should be strictly pursued.

It cannot be doubted that, upon satisfactory proof of mistake or omission, the proper court may so amend its record as to make it conform to the facts ; but many things occur, during the progress of a trial, that form no part of the record, unless they are properly made so by a bill of exceptions.    The object of the record is to show, in a clear and concise form, that every thing essential to a legal and orderly trial has been done, without setting forth in detail the manner in which essential matters were performed.    It should appear, for example, that the requisite number of jurors was empaneled and sworn, but it is not necessary that each successive step leading thereto should be recorded.    If a question arises in regard to a challenge for cause, or as to the right to stand aside a juror, and the like, the ruling of the court may be brought upon the record by an appropriate bill of exceptions.    In my opinion that would have been the proper course in the present case, instead of attempting to raise the question by adding to the record, by way of amendment, that which in strictness forms no part thereof.    But, without resting our judgment on technical grounds, in regard to which there may possibly be some room for doubt, and assuming that the question involved in the first assignment is fairly presented by the record, we are of opinion that there was no error in the ruling of the court.

The practice of " standing aside " jurors, as it is called, had its origin in the construction given by the courts to the statute 33 Edward I., enacted in 1305 ; and, like many other customs, it descended to us from that country whence most of our laws and customs were derived :  Warren *v.* Commonwealth, 1 Wright 45. In that case Mr. Justice Thompson characterizes the practice as " ancient and uniform," and cites 5 Bac. Abr. 365, and 2 Ib. 764, wherein the construction given to the statute is thus spoken of :  " It hath also been agreed, and is now the established practice of the courts, that·if the king challenge a juror before the panel is perused, he need not show any cause of his challenge till the whole panel be gone through and it appear that there will not be a full jury without the persons so challenged :

Co. Litt. 156 ; Vent. 309 ; 2 Hale P. C. 271 ; 2 Hawk. 518." Substantially the same language is used in 4 Black. 353 ; Roberts' Dig. 339, and other authorities that might be cited. The practice thus inaugurated and firmly established in England was inherited by us, and has since been repeatedly recognized by our courts : Commonwealth *v.* Jolliffe, 7 Watts 585 ; Warren *v.* Commonwealth, supra ; Zell *v.* Commonwealth, 13 Norris 258. And it is precisely the same here as in England. " While in preparation for trial, the list of jurors is being called and the prisoner is being required to challenge or accept them severally as presented ; if the prosecuting officer objects to any, the question as to them is not now tried, but they are simply required to stand aside. In this way the panel is gone through with," etc. : 1 Bishop's Crim. Proc. § 938 ; 2 Am. Cr. Law, § 2956.

While it is virtually conceded that in the higher grades of felony, at least, the practice has been so long continued and uniformly sanctioned, that it has acquired the force of positive law, it is still contended that it does not apply in other grades of crime, especially in misdemeanors ; but no such distinction as that can be found in any of the text books or adjudicated cases. On the contrary, the authorities appear to hold that the practice is the same both in trials for misdemeanor and for capital felonies : 4 Black. 353, note ; 3 Harg. St. Tr. 579 ; 2 Hawk. P. C. 569.

It is also contended that, inasmuch as the Commonwealth is now entitled, under our statute, to peremptory challenges, the reason for permitting the district attorney to stand aside jurors has ceased, and hence the practice itself should be discontinued. In our law authorizing peremptory challenges there is nothing to indicate that the legislature intended any modification of the practice in question, and therefore we have no right to interfere with it. A similar position was assumed in Warren *v.* Commonwealth, supra, and it was there held that the rule of practice was not changed by the allowance of peremptory challenges. Nor is there any reason why it should be. If the practice, which is undoubtedly older than the Commonwealth itself, is still in force, and has never been restricted to any particular class of criminal cases, it is not for us to say whether it is a good or bad practice, fair or unfair to any particular class of defendants. The fact that it has so long stood the test of experience is certainly an argument in its favor.

The right claimed by the Commonwealth should always be exercised under the supervision of the court, and when that is done it is difficult to understand how the interests of the defendant can be unduly prejudiced. He cannot claim the right of selecting a jury from the panel. In the exercise of his right of challenge he may exclude from the jury a certain number,

without showing any cause, and as many more as he may be able to successfully challenge for cause.

If the due administration of justice requires any change or modification of the practice under consideration, it must be effected by legislative action. It is not the province of the courts to make the change. The only question we have any right to consider is whether in the construction which was undoubtedly given to the statute 33 Edward I., and the practice which was thereby established, all classes of criminal cases, misdemeanors as well as felonies were alike comprehended. We are satisfied they were, and that the practice continues unchanged.

A careful examination of the record discloses no error that would justify a reversal of the judgment.

The judgment of the court of Quarter Sessions of Philadelphia county is therefore affirmed. And it is further ordered that the plaintiffs in error be remanded to the custody of the Warden of the Eastern Penitentiary, there to be confined, according to law and the sentence of said court, for the residue of the term for which they were respectively sentenced, and which had not expired when they were admitted to bail under the order of this court : and that the record be remitted to the said court of Quarter Sessions with instructions to carry this order into effect.