## Case No. 14,988.

UNITED STATES v. DOUGLASS.

[2 Cranch, C. C. 94.] [1]

Circuit Court, District of Columbia. Dec. Term, 1813.

WITNESS—FREEBORN MULATTO.

A freeborn mulatto is a competent witness against a white person.

---

## Case No. 14,989.

UNITED STATES v. DOUGLASS et al.

[2 Blatchf. 207.] [2]

Circuit Court, S. D. New York. June 2, 1851.

CRIMINAL LAW — JOINT INDICTMENT—EVIDENCE— MURDER — CHALLENGE TO JURORS — HOW ALLOWED—QUALIFIED PEREMPTORY CHALLENGES— NEW TRIAL.

1. Where, on a joint indictment against three for murder, one of them is tried separately, it is not competent for him to give in evidence a conversation between the other two, when they were alone, inculpating themselves and exculpating him from all participation in the crime.

2. The cases of Powell v. Harper, 5 Car. & P. 590, and of Doe v. Haddon, 3 Doug. 310, commented on and explained.

3. What is direct evidence, and what circumstantial evidence.

4. In a case of circumstantial evidence, the jury, in order to convict, must find the circumstances to be satisfactorily proved as facts, and must also find that those facts clearly and unequivocally imply the guilt of the accused, and cannot be reasonably reconciled with any hypothesis of his innocence.

5. Where a person is present, actually or constructively, at a murder, aiding and abetting it, that is sufficient, both at common law and under the statutes of the United States, to warrant his conviction under an indictment charging him with the murder, though containing no count charging him with only being present at the murder, aiding and abetting it.

6. The acts of congress of April 30, 1790 (1 Stat. 114, § 10), and of March 3, 1825 (4 Stat. 115, § 4), do not make the aiding and abetting an act of murder by personal presence and assistance, a separate and distinct offence.

7. A qualified peremptory challenge in a criminal case, that is, a right to set aside a juror without challenging him for principal cause or to the favor, and to have him finally excluded from the jury unless the panel is exhausted by the challenges of the prisoner, exists in favor of the government in the courts of the United States. Per Nelson, J.

8. This is the settled doctrine of the common law, and was recognized by the supreme court of the United States in U. S. v. Marchant, 12 Wheat. [25 U. S.] 480. Per Nelson, J.

9. The act of July 20, 1840 (5 Stat. 394), applies only to the mode of selecting the jury, that is, by ballot, lot or otherwise, as prescribed by the state laws, and does not affect the questions involved in the right of challenging the jurors called, whether peremptorily or for cause. Those questions stand upon the common law, except where regulated by act of congress. Per Nelson, J.

[Cited in U. S. v. Devlin, Case No. 14,953; U. S. v. Coppersmith, 4 Fed. 199.]

10. The act of July 20th, 1840 (5 Stat. 394), manifests a purpose to conform the regulations in regard to the designation and empanelling of jurors in the courts of the United States, so far as may be practicable, to the existing laws of the particular states. Per Betts, J.

[Cited in U. S. v. Devlin, Case No. 14,953.]

11. It is a well-settled principle, in the jurisprudence of the United States, that rules of state practice acted upon by the courts of the United States in a state, as obligatory upon them, have the efficacy of rules adopted by express order of those courts. Per Betts, J.

12. The right to a qualified peremptory challenge in a criminal case did not belong to the crown, at common law. It rested wholly upon a construction of the statute of 33 Edw. I. Per Betts, J.

13. The case of U. S. v. Marchant, 12 Wheat. [25 U. S.] 480, did not involve any question as to the right of the government with regard to challenges of jurors. Per Betts, J.

14. The laws of the state of New-York do not allow to the prosecution, in a criminal case, such qualified peremptory challenge, and the practice of the courts of the United States has always been, to conform in all respects, in trials by jury, as nearly as practicable, to the laws of the state in which they sit. Per Betts, J.

15. The attorney for the United States is bound to assign and substantiate his challenge when it is made, and before other jurors can be drawn. Per Betts, J.

This was a joint indictment against three persons for murder upon the high seas. The prisoners were tried at New-York, before Mr. Justice NELSON and Judge BETTS, in May, 1851, and found guilty. [Edward F.] Douglass was tried separately. James Clements and Thomas Benson were tried together. Before sentence, a motion for a new trial was made before both judges, upon their minutes of the trial and the charge of the presiding judge to the jury. The indictment, in every count, charged the murder of the deceased by each of the prisoners There was no count charging either of the prisoners with only being present at the murder, aiding and abetting it. The points urged as grounds for a new trial were these: 1st. That the court erred in allowing the district attorney to exercise a qualified peremptory challenge, by excluding individual jurors from the jury until the panel should be exhausted, without making any challenge to such jurors for principal cause or to the favor; 2d, that Douglass ought to have been allowed to prove a conversation between Benson and Clements when they were alone, inculpating themselves and exculpating Douglass from all participation in the crime; 3d, that the court erred in not charging the jury that the evidence was purely circumstantial; 4th, that the court erred in not charging the jury that the evidence

---

[1] [Reported by Hon. William Cranch, Chief Judge.]

[2] [Reported by Samuel Blatchford, Esq., and here reprinted by permission.]

must exclude, to a moral certainty, every hypothesis but that of guilt, before a conviction could be had, and that the court misdirected the jury, in instructing them that they could convict the prisoners if the circumstantial evidence was found to be more consistent with their guilt than with their innocence; 5th, that the court erred in charging the jury that mere presence, actual or constructive, at the murder, aiding and abetting it, was sufficient to warrant a conviction under the indictment.

Ogden Hoffman and William M. Evarts, for the United States.

Lorenzo B. Shepard and George F. Betts, for prisoners.

NELSON, Circuit Justice. The motion for a new trial made in this case is denied. But it is proper to say, that the judges do not altogether agree in respect to the point made as to the right of the government to a qualified peremptory challenge—that is, the right to set aside a juror without cause, and to have him finally excluded from the jury unless the panel is exhausted by the challenges of the prisoner. If the jury-list is exhausted before the panel is completed, it is admitted that the juror thus set aside must be called and must serve, unless he is challenged by the government for cause. This qualified right of challenge without cause is the settled doctrine of the common law, and has been recognized by the supreme court of the United States in the case of U. S. v. Marchant, 12 Wheat. [25 U. S.] 480, and has been practised upon in some of the circuits. The doubt that is suggested in regard to it arises under the act of July 20, 1840 (5 Stat. 394), which provides for the designation of jurors to serve in the federal courts, by ballot, lot or otherwise, according to the mode of selecting them in the states where such courts are held; and for this purpose, those courts are empowered to make rules and regulations for conforming the designation and empaneling of jurors to the laws and usages of the states as they may exist at the time. A rule to this effect has been adopted in this district. My Brother Betts thinks that the act of 1840 adopts, together with the mode of selecting and empaneling the jury, the law of the state regulating the right of challenge, which would exclude the qualified right of peremptory challenge that belongs to the government at common law. Such is the law of the state. But my own opinion is, that the act of 1840 applies only to the mode and manner of drawing or selecting the jury, that is, by ballot, lot or otherwise, as prescribed by the state laws, and does not affect the questions involved in the right of challenging the jurors called, whether peremptorily or for cause; and that those questions stand upon the common law, except where regulated by act of congress.

In the present case, the panel was completed before the jury-list was exhausted, and before the privilege of peremptory challenge belonging to the prisoners was exhausted. The question, therefore, in this particular case, is one of no substantial importance in the fair and proper administration of justice. Great liberality was extended by the court to both sides in forming the panel, with a view to the selection of an impartial and intelligent jury, and such was eminently the character of the one obtained.

BETTS, District Judge. The judges differ in opinion upon the first point urged as a ground for a new trial, and concur in regard to all the others.

Upon the second point, we think there was no foundation in law for admitting the evidence offered. The general principle laid down by text-writers is explicitly against it (Best, Ev. 96; 50 Law Lib., N. S., 79); and so is the reason of the thing. Mere assertions by one person, affecting the guilt or innocence of another, show no such privity with the latter as to become evidence for or against him. The case of Powell v. Harper, 5 Car. & P. 590, is too loose a statement to be entitled to reliance, if it intends to declare any such doctrine; and, in so far as it admits the naked declaration of a person not on trial, that he stole certain property, to be evidence against another that he received it knowing it to be stolen, it is against the well-established rules of law. Some feature in the case is undoubtedly dropped in the report of it. The case of Doe v. Haddon, 3 Doug. 310, cited for the prisoners, turned on a different point. The declarations offered in evidence were offered to vitiate an act done by the party making them and show it corrupt and void, that act being introduced as the ground of right by the lessor of the plaintiff.

The third point made rests upon a misconception of the character of the evidence. It was not wholly circumstantial. A very large and most important part of it was direct and positive. The murder of the deceased, the report of a musket, the cry of murder by the deceased, the presence of the prisoners on deck at the time, armed with muskets and other deadly weapons, and the violent interference of two of them to prevent the officers of the vessel from going to the rescue of the dying man, are facts directly proved. Such, also, was the fact of the muskets, coming clandestinely to the possession of the prisoners. The only fact important to their conviction of the murder, which depended upon presumptive proof, was, whether the three concurred in the felonious acts out of which the death of the deceased arose.

The fourth point is not supported by the terms of the charge. It was delivered in writing, and is, accordingly, easily compared with the doctrine contended for by the prisoners' counsel. We think that the clear and unmistakable import of it is, that the jury, in order to convict, must find the circum-

stances to be satisfactorily proved as facts, and must also find that those facts clearly and unequivocally imply the guilt of the prisoners and cannot be reasonably reconciled with any hypothesis of their innocence. This is the plain bearing of the instructions, and if, in particular sentences, expressions of a wider and looser bearing occur, yet, in others, the language is explicit and pointed to that effect, and the whole charge is reconcilable only upon the idea that the jury must find that the circumstances remove all reasonable doubt of the guilt of the prisoners.

We think that the fifth point cannot be maintained. At common law, every person present at a murder, willingly aiding or abetting its perpetration, is guilty of murder, and may be indicted and convicted as principal in the first degree. The acts of congress of April 30, 1790 (1 Stat. 114, § 10), and of March 3, 1825 (4 Stat. 115, § 4), in which aiders and abetters are named, do not make the aiding and abetting an act of murder by personal presence and assistance, a separate and distinct offence. The more probable interpretation of those terms is, that they apply to accessories before the fact. There is certainly no fair ground to infer that they were employed in the statutes to distinguish such aiders and abetters from the principal murderer. Whart. Cr. Law, 224. We therefore think the indictment is good in charging the prisoners with the murder by doing acts aiding and abetting its perpetration in their presence. U. S. v. McGill [Case No. 15,676]; U. S. v. Ross [Id. 16,196].

As the first point involves an inquiry into the practice of the court, of much weight and some difficulty, it is proper to set forth more at large the considerations which influence the minds of the judges in the opinions they adopt in respect to it. The presiding judge holds that, as the matter is not expressly regulated by act of congress, the courts of the United States must resort to the common law to ascertain what the rule is in regard to the right of the government to challenge jurors in capital cases. He construes the act of July 20, 1840 (5 Stat. 394), as extending no further than the judiciary act of 1789, and regards its provisions as limited to the mode and manner of obtaining the general panel of jurors to serve in court, and as not governing the method of empanelling them in a specific case on trial. He also holds, that the common law practice of permitting the crown to have jurors set aside without challenging them, till the whole panel is exhausted by the challenges of the prisoner or the acceptance of jurors called, must be regarded as the rule in the courts of the United States. I maintain a different view. We concur in the opinion that, under the terms of the judiciary act of 1789 (1 Stat. 88, § 29), the state law was made the rule of the courts of the United States only in respect to the mode of designating the jurors, and that, in other respects, the common law was followed. U. S. v. The Insurgents [Case No. 15,443]. But I think that the act of May 13, 1800 (2 Stat. 82), and the act of July 20, 1840 (5 Stat. 394), are more extensive enactments, and manifest a plain purpose to conform the regulations in regard to jurors in the courts of the United States, so far as may be practicable, to the existing laws of the particular states.

The 29th section of the judiciary act of 1789 required the jurors to be designated by lot or otherwise, according to the mode of forming juries in the states respectively, to which language the act of May 13, 1800, added the words, "therein now practised;" thus making the state practice of that day the rule governing the courts of the United States in designating jurors. The act of July 20, 1840, annexes to the addition made by the act of 1800, the words, "and hereafter to be practised therein," and more distinctly indicates the intention of congress to bring the whole system substantially within the regulations of the state laws, by declaring first, that the jurors shall have the like qualifications and be entitled to the like exemptions as state jurors "now have and are entitled to, and shall hereafter, from time to time, have and be entitled to;" and secondly, by adding, "and, for this purpose, 'the' 'courts'" of the United States "shall have power to make all necessary rules and regulations for conforming the designation and empaneling of juries, in substance, to the laws and usages now in force" in the states. Though it is not claimed for this language that it, in express terms, conforms the entire regulations, both in obtaining jurors and in empaneling juries, to the laws and usages of the states, yet it is most significant to show, that the state laws and usages were looked to as the leading and main authority in both respects. And, moreover, it denotes the competency of the courts of the United States to regulate the subject by adopting express rules to that end. It is a well-settled principle, in the jurisprudence of the United States, that rules of state practice acted upon by the courts of the United States in a state as obligatory upon them, have the efficacy of rules adopted by express order of those courts. Fullerton v. Bank of U. S., 1 Pet. [26 U. S.] 604. Accordingly, the uninterrupted usages of the courts of the United States in this district, for over fifty years, to conduct criminal trials, especially in the organization of juries, conformably to the state laws, is high evidence of an explicit adoption of that practice.

Independently, however, of these considerations, I think that the right claimed by the attorney for the United States in this case was not maintainable upon any doctrine of the common law. There is no evidence that

the crown ever possessed or claimed that right, except under the provisions of the act of 33 Edw. I. The prerogative right on the part of the king, prior to this act, was to challenge jurors peremptorily, without restriction of numbers, which in effect gave the crown the power of selecting juries in capital cases. Co. Litt. 156b; Hawk. P. C. bk. 2, c. 43, § 2; Bac. Abr. "Juries," E, 10; Com. Dig. "Challenge," G, 1; Joy, Conf. 143, 24 Law Lib. (N. S.) 84; Chit. Cr. Law, 434; 2 Hale, P. C. 271. This was the evil which parliament intended to remedy by the act of 33 Edw. I. Co. Litt. 156b. Bacon gives the act at large (Abr. "Juries," E, 10); and these motives for its passage are assigned by Baron Gilbert. He also adds, that it is the established practice of the courts, in the construction of the act, that the king need not show any cause of his challenge till the whole panel be gone through. That this is a practice of the English courts, resting not on the common law, but wholly upon the construction of the statute, is still more definitely settled by the decisions of the king's bench in Rex v. Parry, 7 Car. & P. 836, and in Reg. v. Frost, 9 Car. & P. 129, 136, made upon the provisions of the act of 6 Geo. IV., re-enacting in substance the act of 33 Edw. I.

Mr. Justice Story, in U. S. v. Marchant, 12 Wheat. [25 U. S.] 480, would also seem, on a fair construction of his language, to place the right of the crown to this mode of challenge, upon the uniform practice which has prevailed in the English courts since the statute of 33 Edw. I.; but the reasoning of the learned judge, collateral to the point under consideration by the court, even if it amounts to a recognition of the English practice as a doctrine of the common law, cannot avail as a judgment of the court on the subject. The point raised upon the certificate of division of opinion, and determined by the supreme court, related solely to the right of two or more persons, jointly charged, in the same indictment, with a capital offence, to be tried severally, separate and apart—an inquiry apparently in no way involving the prerogative or authority of the government in respect to its challenges of jurors on such trial. And, even if the very accomplished jurist who drew up the opinion of the court had explicitly pronounced the privilege now claimed on the part of the United States to be a common law right, the declaration could not, in a different case, carry the authority of a judicial decision, though it would command all the consideration which the suggestions of a judge so acute, laborious and exact, upon questions of common law, always merit and receive.

The point in question was directly raised in the Pennsylvania circuit, before Judges Baldwin and Hopkinson, in 1830, in the case of U. S. v. Wilson [Case No. 16,730]. The district attorney challenged a juror peremptorily. His right to do so was denied by the counsel for the prisoner. The court observed, that they had known no case where the right now claimed had been allowed to the prosecution; that they would not be the first to do it in a capital case, unless it was clearly established; but that, on examining the opinion of the supreme court, in the case of U. S. v. Marchant, 12 Wheat. [25 U. S.] 480, they did not feel themselves at liberty to refuse the qualified right of challenge claimed by the United States.

It was upon reading these cases on the trial of the indictment against the prisoners, that this court permitted the exercise of a like challenge, and the presiding judge considers the law on the subject settled by these cases. I dissent from that opinion, and think that the court committed an error on the trial in allowing the challenges of the district attorney.

The cases in Pennsylvania, which were referred to on the argument, throw no additional light on the subject. Those cases do not appear to harmonize in principle with each other, on the question of the right of challenge, while, in one particular, they strongly corroborate the view I have taken against the existence in the states of any common law right to such challenge. In Com. v. Lesher, 17 Serg. & R. 155, the court deny that such a right of challenge exists in Pennsylvania. In the subsequent case of Com. v. Jolliffe, 7 Watts, 585, that decision is treated as having been incautiously made, and it is held that the statute in force in Pennsylvania is substantially the same as that of 33 Edw. I., and that there is no reason why it should not receive the same construction. Whichever decision is adopted as the correct exposition of the law, the doctrine that this mode of challenge is not a common law right, is not affected by it, any further than as the general reasoning of the court in the last case conflicts with the principle involved in the doctrine. And I most confidently insist, that no act of a state legislature and no decision of a state court can be shown, manifesting an intention to set up, in the United States, a privilege to the prosecution in capital cases, in respect to the organization of the jury, greater than is enjoyed by the accused; and further, that it was the palpable purpose of the acts of Edw. I. and Geo. IV., to bring the right of the crown within a narrower restriction, and only to give the king and the prisoner co-equal rights of challenge for cause.

Under the English practice, and that proposed to be sanctioned in the United States, a way is open for most unreasonable advantages in favor of the government against the prisoner. Suppose the panel to consist of eighty jurors, (the number returned in the present cases,) and that it should so chance that one-half of the whole number are men free of impeachment by challenge for principal cause or favor, yet so circumstanced as to have naturally strong prepossessions

in support of the prosecution—for instance, that they are shipowners, shipmasters and others, so connected with maritime business as to feel honestly but deeply convinced that every act of a sailor at sea, tending to put in peril the lives of the officers, or the vessel or cargo, should be regarded with the greatest distrust of his motives, and as justly requiring, at the hands of the seaman, most satisfactory evidence of his innocence, and that circumstances which, in other relations, would be regarded as slight or insignificant, should carry a weighty import when brought to bear against a sailor. The other half of the panel may be drawn from the ordinary employments of life, and be in no way, by their business, associations or prepossessions, unfavorably impressed respecting the character and integrity of seamen as a class. On empanelling the jury, the district attorney may set aside every one of the forty who would deal dispassionately with the case, and drive the prisoner to exercise his peremptory challenges and those for cause upon the forty who stand naturally in a relation of distrust, if not of hostility, towards him. This, to the extent supposed, is put as an extreme case. But it marks distinctly the principle, and shows that the government may be enabled to force upon the panel men who, unless constrained by overpowering evidence for the defence, would be ready to refuse the prisoner the benefit of an acquittal under almost any circumstances, and might even be inclined, upon testimony faintly criminating him, to render against him a verdict of conviction.

The whole theory of criminal jurisprudence looks to placing the advantage, if one accompanies the case, on the side of the accused; and I think that, after the efforts almost universally put forth in the United States to strengthen and extend such privilege, particularly to a person on trial for his life, we are taking a long step backwards, in setting up the practices of the English assizes, originating in an age of colder sympathy for human life than pervades our era and the jurisprudence of the United States. Accordingly, I regard it as far more consonant with the spirit of our institutions and the rules of criminal law sanctioned by them, for this court to adhere to the humane and guarded practice adopted in this state, than to recur to one drawn from an English statute, (by means of a construction wearing more the appearance of maintaining a royal prerogative against the will of the legislature, than of securing to a prisoner the pittance of favor accorded by it,) which dates back to about the year 1300, to the reign of a monarch who, in advance of the sentiment of his age, made most meritorious efforts to reform the condition of the law in his realm, both civil and criminal.

The legislation of the state of New-York shows conclusively how the rule is accepted here, and may, with great force, be claimed as declaratory of the true import of the English statutory law on the subject. At all events, it fixes definitively the law governing the state courts in this respect. As early as 1786 it was enacted that, in all cases where the attorney-general of this state, in behalf of this state, or he who shall in any case prosecute for the people of this state, shall challenge any juror as not indifferent, or for any other cause, he who shall make any such challenge shall immediately assign and show the cause of such challenge, and the truth thereof shall be inquired of and tried in the same manner as the challenges of other parties are or ought by law to be inquired of and tried. 1 Jones & V. Laws, p. 311, § 22; 1 Greenl. Laws, p. 269, § 22. This statute was included in the revision of 1801 (1 Kent & R. Laws, p. 385, § 25), and in that of 1813 (1 Rev. Laws, p. 334, § 25), and was preserved in the Revised Statutes (1 Rev. St. p. 734, § 11). If the English statute of 33 Edw. I. was ever in force in this colony or state, it was specifically repealed by the acts of 1786 and 1788 (1 Jones & V. Laws, p. 312, § 27; 2 Jones & V. Laws, p. 282, § 37). And then the common law, as modified by the laws and usages of the state, and not as altered by acts of parliament, would govern the method of conducting criminal trials and selecting jurors. 1 Kent, Comm. 472, 473, and notes.

The practice of the courts of the United States has always been to conform in all respects, in trials by jury, as nearly as practicable, to the laws of the state in which they sit. Conk. Prac. (1st Ed.) 298. On the trial of Col. Burr, Chief Justice Marshall said: "The United States have precisely the same rights as the prisoner has, and make the same challenges for a good cause." 1 Burr, Tr. 425. The counsel for the government argued for the right of the government to challenge jurors for cause. Mr. Martin, for Col. Burr, insisted that the United States had no right to disqualify jurors for the prisoner. Chief Justice Marshall replied: "Certainly, the counsel for the United States may challenge for cause." Id. 424. And, under those rulings of the court, the counsel proceeded immediately to try the cause of challenge. These proceedings manifest most clearly that the challenges were received and disposed of by the circuit court pursuant to the laws of the state or the practice of the state courts, and that no reference was had to the English practice under the statute of 33 Edw. I.

To the like effect were the proceedings in Jones v. Van Zandt [Case No. 7,502]. The action was in the name of an individual, but was treated, under a statute of Ohio, as a criminal prosecution, and the question was made as to the right of the government to challenge jurors, and the right was upheld and exercised in conformity with the state law.

Upon the foregoing considerations, I am of opinion that the attorney for the United States had no right to a peremptory challenge, and was bound to assign and substantiate his challenge when it was made, and before other jurors could be drawn. New trial denied.