STEVE B. ROBERTS, *Plaintiff in Error*, v. STATE OF FLORIDA, *Defendant in Error*.

Division A.

Opinion Filed July 11, 1927.

*Will O. Murrell*, for Plaintiff in Error;

*J. B. Johnson*, Attorney General, and *Dewey A. Dye*, State's Attorney, for the State.

ELLIS, C. J.—The plaintiff in error was indicted for the murder of W. A. Stone, alleged to have been committed on December 31, 1925, in the Pasadena Hotel. Stone died about two days afterwards in the Sarasota Hospital.

The circumstances of the killing, as nearly as can be gathered from the record, were as follows:

Stone and a man named Garrick went to the Pasadena Hotel and to a room occupied by Steve B. Roberts. Soon after entering the room the defendant, plaintiff in here, shot Stone with a pistol and as he turned to leave the room shot him again with a shotgun. As a result of the wounds inflicted Stone died at the hospital where he was taken.

The State's case was supported by the testimony of Garrick; the dying declarations of Stone and the witness Maud Roberts. The room was occupied by Roberts; he was lying on the bed when Garrick and Stone entered; his daughter, Maud Roberts, was also in the room. The fact of the shooting was clearly established. The existence of a premeditated design was easily deducible from the evidence. The motive for the shooting does not appear. There is something like a suggestion that Roberts thought Stone and Garrick were in the room to rob him. There is also some evidence to show that the motive was one of revenge for the murder sometime before of a man named

Monroe, whom Roberts seemed to suppose was killed by Stone. However this may be, the fact of the killing deliberately of Stone by Roberts was fully established.

The errors assigned upon which the plaintiff in error relies for a reversal of the judgment are thirteen in number. Roberts was convicted of murder in the second degree. As the evidence was sufficient to sustain the charge of murder in the first degree it is sufficient to support the verdict of murder in the second degree. See Ammons v. State, 88 Fla. 444, 102 South. Rep. 642; Mobley v. State, 41 Fla. 621, 26 South. Rep. 732; Griffin v. State 48 Fla. 42, 37 South. Rep. 209.

The motion to quash the indictment, the overruling of which is assigned as the first error, was not presented to this Court by the record proper. It is contained only in the bill of exceptions. The bill of exceptions upon proper authentication becomes part of the record. Its purpose is to preserve of record only such matters occuring at the trial which are not matters of record. The clerk is the custodian of the record and it is his certificate which gives authenticity to the transcript of the record. A motion to quash the indictment is part of the record proper and should appear there and not in the bill of exceptions. The assignment therefore will not be considered.

The motion to quash the panel of jurors drawn on November 19th, which was a few days before the trial, was overruled. That order constitutes the basis of the second assignment of error. The motion is not. evidence of the facts asserted in it. It is not self-supporting. There were no affidavits submitted in support of its grounds. See Broward v. State, 9 Fla. 422; Davis v. State, 35 Fla. 614, 17 South. Rep. 565; Smith v. State, 57 Fla. 24, 48 South. Rep. 744; Haynes v. State, 71 Fla. 585, 72 South. Rep. 180.

The defendant's counsel ''offered to introduce evidence

in support of said motion," the record states, but the court denied him "that right." There was no offer to show what counsel considered as evidence in support of the grounds of the motion, therefore, it is impossible to say that defendant was deprived of any right. It cannot be assumed that the evidence which counsel offered was in support of the motion as his conception of what constituted such evidence might have been erroneous. Besides, there were several grounds to the motion, some of which were without any merit. Evidence in support of such grounds would have been useless.

The defendant complains that the court erred in not permitting his counsel to question a "prospective talesman," named F. D. Rawls, on his *voir dire* as to whether his "mind was in the same state he would want a juror's mind to be if he was defendant, being tried under like circumstances and if accepted as a juror in this case would he give this defendant the same trial he would want to be given to himself under like circumstances."

Aside from the obvious fallacy contained in this question, the record does not disclose that Rawls did not serve. If he did serve and could have qualified under the question the defendant could not be heard to complain and if the venireman could not have qualified under the question it would have constituted no ground for an objection to his qualifications, assuming of course, that any normal person on trial for a crime would like to be tried by a jury *fovarable* to him.

The State's attorney offered to show by a witness named L. D. Hodges, that shortly after the shooting and before any arrest of Roberts had been made that the latter remarked to Hodges as he entered Roberts' room that he would "let no damn s-o-b come in his room and rob me."

Defendant's counsel objected to the evidence and the objection was overruled. This ruling constitutes the basis of the fourth assignment of error. The record shows that objection was made to the request made of the witness to relate what statement Roberts made. The objection was overruled and exception was noted. There was no motion to strike the evidence from the record but on the other hand upon cross examination the statement was again introduced into the trial by a question by defendant's counsel. The statement appeared to have been voluntarily made and was clearly admissible. See McDonald v. State, 70 Fla. 250, 70 South. Rep. 24; Phillips v. State, 88 Fla. 117, 101 South Rep. 204; Sims v. State, 59 Fla. 38, 52 South. Rep. 198.

Assignments numbered five, six and seven are not well founded. The testimony of Garrick that the defendant said: "It was a foolish thing to be done," was admissible. The sixth assignment rests upon exceptions taken by the defendant to the court's ruling, sustaining objections made by the State to a number of questions propounded by the defendant's counsel to the witness Garrick on cross examination. They are all grouped under one assignment and not argued further than: "the questions went directly to the credibility of the witness," and that counsel should be "allowed a wide latitude in the cross-examinations of witnesses." We are not advised what the questions would have brought forth in the way of answers. One of the questions was improper because it combined two questions in one so that no true answer could be given if attempted; another question was incriminatory in character; several others apparently sought irrelevant replies. When several objections are included in one assignment and all objections are not well founded the assignment fails. See Shiver v. State, 41 Fla. 630, 27 South. Rep. 36; Eggart v. State,

40 Fla. 527, 25 South. Rep. 144; Davis v. State, 66 Fla. 349, 63 South. Rep. 847.

The seventh assignment based on the refusal of the court to allow in evidence x-ray pictures of the body of the deceased other than those showing the pistol bullet is without merit. It seems to have been counsel's purpose to impeach or contradict by such pictures the dying declarations of the deceased that he was shot with a shotgun as well as a pistol, it being contended that the pictures showed no shotgun wound. We think there was no error in that ruling.

We have examined the charges given and those refused and find that no error was committed. The first charge relates to the possible intoxication of the defendant at the time of the shooting. It was favorable to him and there was ample evidence upon which to base it.

Two charges requested by the State and given are made the basis of one of the assignments. Neither one of them bears the interpretation placed upon it by counsel. While the charges were probably unnecessary they were not erroneous. Both charges are subject to the criticism that they singled out one phase of the case and dealt with it. It cannot be said that undue prominence was given to the particular witness or the particular evidence to the extent of invading the province of the jury to the prejudice of the defendant. See Wilson v. State, 47 Fla. 118, 36 South. Rep. 580; Hisler v. State, 52 Fla. 30, 42 South. Rep. 693.

The above cases hold that charges of that character are properly refused. If charges requested by the State's attorney are subject to that defect they of course should be refused. While portions of the charges given when considered apart from other language may seem to warrant the criticism made of them by counsel when taken in their entirety they cannot be said to have intrenched upon the province of the jury to the defendant's injury.

Trial judges should avoid expressing in their charges to

the jury, or by any other means, their opinion upon the credibility of witnesses or of the merit of the case. See Lester v. State, 37 Fla. 382, 20 South. Rep. 232.

A few minutes after the shooting the defendant was arrested and taken to jail. Stone had been taken to the hospital. A day later the defendant was taken to the hospital where he was identified by Stone as the man who shot him. This fact was testified to by a woman nurse at the hospital. There was no objection to that testimony. A witness named Duncan, a deputy sheriff, testified to the identification of Roberts by the deceased. It was done in the following manner: Roberts was taken into the room at the hospital where Stone was lying and Duncan asked Stone if Roberts was the man who shot him. "He (Stone) looked at him" and then at Duncan and again at Roberts and then said: "Yes, that is the man." Duncan and Roberts and the nurse were the only persons in the room with Stone. There was no denial on Roberts' part that he was the man who Stone said shot him.

The charge complained of was as follows:

"Where some one in the presence of the accused makes a declaration involving or implying his guilt, and there is opportunity for a reply and the surroundings and persons are such as render a denial or explanation ordinarily expedient and proper, yet he remains silent, such conduct and silence may be considered as an admission on his part, so,

"If you find from the evidence that the defendant was charged with shooting William A. Stone and made no denial of such charge then under the law an admission on part of the accused may be implied by you gentlemen of the jury from the fact of acquiescence of the defendant in such incriminating charge or statement, but in order for such silence or acquiescence on part of the defendant

to be an admission of the truth of such charge made against him you must believe from the evidence that the truth or falsity of the charge made was in the knowledge of the defendant, and that such charge was made in his hearing, and in a language which he would understand, and tended to implicate him directly or indirectly, you must also find that the defendant could have, if he had so desired, denied such charge with propriety at the time and occasion when made, and if you do so find from the evidence in the case at bar and that the defendant was charged with shooting William A. Stone in the presence and hearing of the defendant and did not deny said charge under the facts and in the circumstances as stated in this instruction, you are at liberty to consider the charge or statement made as having been at the time and place when uttered adopted by the defendant, and may be considered as competent evidence against him as an indication of guilt.''

The circumstances under which the identification was made rendered it admissible to be given such weight as the jury may have under proper charges by the court considered it entitled to as an indication of the defendant's guilt. See 2, Wharton's Criminal Evidence (10 Ed.), Section 680; 1 Ency. of Evidence, p. 367.

There were no errors in the refusal of the court to charge as requested by the defendant. The court's general charge was full, applicable to the evidence and correctly states the law. The case was not at all a complicated one. The facts were few and simple. It was largely a matter of identification.

There were only three men and one woman in the room when the shooting occurred, so far as the evidence discloses. The defendant had a pistol and a shotgun within easy reach. In fact the pistol was concealed under the cover or pillow of the bed on which he was lying. Stone was seated in a chair nearby and Garrick was near the bed. The

woman, defendant's daughter, stood near the foot of the bed. There was evidence that the defendant spoke to Stone about the killing of a man named Munroe and remarked that Stone had killed one good man but would never kill another. Then the shooting began. Stone was shot several times; from one or more of the wounds he died. Garrick was shot in one finger and ran out of the room followed by Stone, who rose, fell on the bed, rose again and went down the stairs. The woman had also left the room. No one remained but the defendant who was standing in the middle of the room when the officer arrived.

Garrick and Stone both said that the defendant did the shooting. It was apparently without provocation, certainly without justification. His identification later by Stone was complete and in conformity with rules governing the admission of such evidence.

An examination of the entire case does not reveal that during the trial there was any miscarriage of justice on account of any of the alleged errors of which complaint was made. See Section 2812, Revised General Statutes, 1920.

No error having been made to appear the judgment is affirmed.

Affirmed.

STRUM AND BROWN, J. J., concur.

WHITFIELD, P. J., AND TERRELL AND BUFORD, J. J., concur in the opinion.