**SAMUEL JIMENEZ and DIEGO HERNANDEZ, v. THE STATE OF FLORIDA.**

30 So. (2nd) 292
April 8, 1947
Rehearing Denied May 19, 1947

January Term, 1947
Special Division A

*William C. Pierce,* for appellants.

*J. Tom Watson,* Attorney General, and *Reeves Bowen,* Assistant Attorney General, for appellee.

McNEILL, Associate Justice:

On March 22nd, 1946, appellants Samuel Jimenez and Diego Hernandez, and one Raymond Rodriguez, who has not appealed, were by the Grand Jury of Hillsborough County, indicted for the offense of rape of one Kathryn Ragan. This indictment consisted of two counts, the first count charged that the three above named defendants on the 19th day of February, 1946, in the County of Hillsborough, "In and upon one Kathryn Ragan, a female over the age of ten years, did unlawfully make an assault on her, the said Kathryn Ragan, and then and there did unlawfully ravish and carnally know by force and against the will of her, the said Kathryn Ragan."

The second count charged that on the 19th of February, 1946, in the County of Hillsborough, defendant, Diego Hernandez, "in and upon one Kathryn Ragan, a female over the age of ten years, did unlawfully make an assault on her, the said Kathryn Ragan, and then and there did unlawfully ravish and carnally know, by force and against the will of her, the said Kathryn Ragan, and that Samuel Jimenez and Raymond Rodriguez were then and there present, unlawfully aiding, abetting, assisting, procuring, encouraging, counselling and advising the said Diego Hernandez in the manner and form aforesaid, to do and commit, and so the said Diego Hernandez, Samuel Jimenez and Raymond Rodriguez, did in the manner and form aforesaid, unlawfully make an assault on her, the said Kathryn Ragan, and then and there did unlawfully ravish and carnally know, by force and against the will of her, the said Kathryn Ragan," so it is by the first count of the indictment all three above named defendants were charged as principals in the first degree, and by the second count, Diego Hernandez was charged as principal in the first degree and Samuel Jimenez and Raymond Rodriguez as principals in the second degree. Before arraignment defendants jointly and severally moved to quash the first and second counts of the indictment, respectively, on several grounds. This motion was denied, and upon a joint trial of all three said defendants, each of them was convicted of the offense of assault with intent to commit rape. Thereupon, motion for new trial was filed by all three defendants on a number of grounds.

In due season this motion was denied, and thereupon, appellants Diego Hernandez and Samuel Jimenez were each by the trial Court adjudged guilty of assault with intent to commit rape and appellant Hernandez was sentenced to five years' imprisonment, and the appellant Jimenez was sentenced to three years' imprisonment in the State Prison, whereupon, Diego Hernandez and Samuel Jimenez, each, severally, appealed.

In their brief seven questions are presented by appellants. The first, second and third questions are so related that we will consider them together.

First Question. Upon a trial under an indictment for rape where the prosecutrix testified positively that the defendants raped her and had completed acts of sexual intercourse with her, and the defendants admitted having such completed acts of sexual intercourse with her, but testified that such acts were had with the consent of prosecutrix, could there be a valid conviction of the offense of assault with intent to rape?

Second Question. Where the evidence shows that the defendants are either guilty of the higher grade of offense, or are innocent, did not the trial Court commit reversible error by instructing the jury as to lesser and included offenses?

Third Question. Should not the lower Court have instructed the jury to convict defendants of the crime of rape or to acquit them?

Section 919.14 Florida Statutes of 1941, provides "If the indictment or information charges an offense which is divided into degrees without specifying the degree, the jurors may find the defendant guilty of any degree of the offense charged; if the indictment or information charges a particular degree, the jurors may find the defendant guilty of the degree charged, or of any lesser degree. The Court shall in all such cases charge the jury as to the degrees of the offense." And Section 919.16 Florida Statutes of 1941 provides, "Upon an indictment or information for any offense the jurors may convict the defendant of an attempt to commit such offense if such attempt is an offense, or convict him of any offense which is necessarily included in the offense charged. The Court shall charge the jury in this regard."

In the case of Ruby Jean Hodella v. The State, 158 Fla. 674, 27 Southern 2nd, 674, the appellant was charged with the offense of murder in the second degree and was convicted of manslaughter. On appeal she contended the evidence showed that the appellant was either guilty of murder in the first degree or that the homicide was justifiable and that, therefore, she could not legally be convicted of manslaughter, but in affirming her conviction, this Court said: "We entertain the view that the evidence was sufficient to have sustained a conviction of murder in the first degree, and it therefore was sufficient to sustain a conviction of any lesser de-

gree of unlawful homicide," and cited Ammons v. State, 88 Florida, 444, 102 Southern 642, where defendant was charged with murder in the first degree, and convicted of murder in the second degree, and where the Court in affirming the judgment said: "In the case at bar, the evidence for the State tends clearly to establish the crime of murder in the first degree. What reason impelled the jury to return a verdict of murder in the second degree need not be inquired into, as a verdict of murder in that degree will be sustained if the evidence would support a verdict of a higher degree of homicide, because the defendant's guilt as to each grade of unlawful homicide is involved upon a trial for murder in the first degree," and further stated, "The evidence was ample to support a verdict of murder in the first degree, and the defendant cannot claim reasonably to be injured by the verdict because the evidence was more than sufficient to convict him."

In Brown v. The State, 31 Florida, 207, 12 So. 640, appellant was charged with murder in the first degree and was convicted of manslaughter in the second degree. In affirming this judgment, the Court said: "The offense of which there has been a conviction is included within or may be carved out of that major offense charged in the indictment and the indictment is sufficient to sustain the conviction . . . and the fact that the evidence is more than sufficient to support the conviction does not render it insufficient to do so and the prisoner is in nowise hurt by that excess of its probative force which the jury has ignored." See also Roberts v. State, 94 Fla. 149, 113 So. 726, Prevatt v. State, 82 Fla. 284, 89 So. 807, Bowden v. State, 152 Fla. 715, 12 So. (2nd), 887, and 42 Corpus Juris Secundum 1327, Indictments and Informations, Sec. 299: "The general rule is that accused may be convicted of a lesser degree of an offense, or a lesser included offense, even though the proof shows that he was guilty of the greater degree or greater offense, as where he is indicted only for the lesser offense and the proof shows commission of a greater crime inclusive of the lesser one charged, or where he is indicted for the greater offense the allegation being inclusive of the lesser offense, and the proof

shows commission of the greater offense, and under the principles of harmless error discussed in Criminal Law, Section 1941, accused may not complain of error in finding him guilty of a lesser crime than that shown by the evidence or charged in the indictment."

We have not overlooked the authorities cited by appellants in support of their first, second and third questions supra, but we think the rule is well settled in this State under the Statutes and authorities above cited, that the jury had the power to convict appellants of the offense of assault with intent to commit rape even though the evidence was sufficient to convict them of rape as charged in the indictment. Again, referring to appellants' second and third questions, it appears from the record that at the conclusion of the testimony the Court in the absence of the jury submitted his proposed charges to counsel for appellants and no objection was made thereto, and no further charges were requested, nor did the appellants complain of the charges given by the Court or the Court's failure to give any other or further charges at any time prior to the verdict. They had ample opportunity to object to such charges, or to request further charges before the charges were delivered and again when the charge of the Court was delivered, and the record shows that the jury twice returned to the Court Room for further instructions and at no time did appellants object to the charges now complained of, or to the failure to give other charges as they were required to do by Subdivision 4, Section 918.10 Florida Statutes of 1941. So we hold that it was the duty of the trial court to charge the jury as to the lesser offense of assault with intent to commit rape, which offense was in law included in each count of the indictment, and the defendants were not entitled to have the jury directed to either convict of rape, or to acquit.

Appellants were not convicted of assault and battery so it is necessary for us to discuss that feature of the Trial Court's charge.

Appellants' Fourth and Fifth questions are so related that we will consider them together.

Their Fourth Question is: Can an indictment that charges

three defendants with a joint rape be sustained by proof that each committed a separate and distinct offense?

· And their Fifth Question is: "Did not the lower Court commit reversible error in admitting over appropriate objection, the testimony of the prosecutrix as to subsequent acts of sexual intercourse with the defendants Jimenez and Rodriguez?"

As above stated, the first count of the indictment charged all three defendants as principals in the first degree and the second count charged the defendant, Diego Hernandez, as principal in the first degree, and the defendants, Samuel Jimenez and Raymond Rodriguez as principals in the second degree. Appellants contend that there is a variance between the indictment and the proof, their claim being that the record shows no more than that each of them, as well as the defendant, Raymond Rodriguez (who did not appeal) committed a separate and independent rape on Kathryn Ragan, without any concerted action between them and cites the testimony· of the prosecutrix to the effect that neither of the men had anything to do with the other men's intercourse with her, but, as shown by the record, this is not the whole of her testimony, and when considered with her entire testimony, it appears that this testimony goes no further than to intimate that no more than one defendant at a time had hold of her and assaulted her. From her testimony it appears that on the late afternoon, or early evening, of February 18th she went to the Howard Bar in Tampa with a female friend who worked at said bar, and while there waiting for her friend to get off from work at midnight, she was at about ten or ten thirty o'clock P. M. introduced to appellant Hernandez, and shortly afterwards to appellant Jimenez and defendant Rodriguez. She told them she liked to dance and she and the three defendants got into a car and went to the Tangerine Tavern where they had a drink, or drinks, and where she danced with defendants Jimenez and Rodriguez. Upon leaving the Tangerine Tavern they started driving down the street and turned into a dirt road; that she didn't know the name of the road or where it was; that the car was stopped and the appellant Hernandez told appellant Jimenez

and defendant Rodriguez to get out, and they got out; that appellant Hernandez asked her to pull her clothes up, and she didn't do it, and that he tore her pants off altogether; that she was trying to slip away from him, and he hit her twice and choked her, and had intercourse with her. That every once in a while defendants Jimenez and Rodriguez would come to the car door and peek in; that when appellant Hernandez completed his intercourse with her, appellant Jimenez came in the car and hit her. At this point in the prosecutrix' testimony, and for the first time, counsel for the defendants objected to further testimony as to any acts of intercourse subsequent to the intercourse with Hernandez. The prosecutrix then futher testified that Jimenez had intercourse with her and that immediately following his intercourse, defendant Rodriguez came into the car and had intercourse with her. It appears from the testimony that appellant Jimenez was the owner and driver of the car. When they left the Tangerine Tavern, Jimenez was driving, defendant Rodriguez was in the front seat with the driver, and appellant Hernandez was in the rear seat with the prosecutrix. Appellant Jimenez testified with reference to the spot where the alleged rape was committed: "I went and parked the car in that spot." Prosecutrix further testified that while Rodriguez had her, appellants came back and looked in the car, and that after they all had left the scene where each defendant had had intercourse with her, and while she was in the rear seat with Hernandez, he again raped her in the car. Appellant Jimenez further testified, "I went and parked the car in that spot and myself and Diego went out of the car . . . and we was on the outside and I asked Diego for a rubber and he gave it to me, and then Raymond came out and Diego went in. Diego went in the car and stayed there, well about eight or ten minutes, and then came out, and I went in," and when asked if he saw Diego or Raymond have intercourse with the prosecutrix, he said, "No, sir, because I was about 15 or 20 feet out of the car," and when asked, "After you got out of the car, what happened?" he answered, "After I got out of the car, Raymond got in the car," and when asked "Where were you while he was in the car?" he

answered "I was with Diego outside" and when asked "How far away from the car?" he answered, "about fifteen or twenty feet." It clearly appears from the whole record that immediately after Appellant Hernandez had intercourse with the prosecutrix, he moved out of the car, and appellant Jimenez entered and had intercourse with her, and immediately after he moved out of the car, defendant Rodriguez entered and had intercourse with her. It further appears from the record that at some point after all the parties had left the scene of the above mentioned transactions, the prosecutrix got out of the car, hailed and entered a taxicab, and requested to be driven to the police station, and on her arrival there, she made complaint to the Inspector of Police, R. S. Waters, who testified she was then crying and was in a very nervous state, and that through the information given by her, the appellant Jimenez was identified and arrested, and later appellant Hernandez and defendant Rodriguez were arrested. The record further shows that when appellant Jimenez was brought to the police station, the prosecutrix identified him and said that he was one of the men that had raped her, and that he had hit her, whereupon, he denied having hit her, but admitted he did have intercourse with her. And thereafter appellant Jimenez went with and pointed out to Inspector Waters and the other officers the place where he had parked the car. Witness Waters further testified that the place pointed out by Jimenez as being the place where he had parked the car was roughly a mile and a quarter North of the Tangerine Tavern and was outside the City limits of Tampa in the wide open woods land. This witness further testified that the prosecutrix' lip was bruised and puffed on the lefthand side, that she had a couple of scratches on her neck, and that he saw nothing else, because her clothing was on.

Shortly after she arrived at police station, the prosecutrix was taken to a hospital and examined by a doctor or interne, who testified that she examined prosecutrix between midnight and daylight; that prosecutrix was in a state of anxiety and nervous apprehension, was highly nervous, excited and trembling badly; that her left lip was freshly bruised

with a small cut on the inside, was quite swollen and that there was an abrasion on the right shoulder where the skin had been rubbed away, and about three long abrasions where the skin had been rubbed away on the left side of prosecutrix' neck.

Considering the whole record, we think the evidence was sufficient to make a jury question as to whether the defendants were acting in concert in their assaults upon the prosecutrix. The assaults of each of the three defendants were made at the same place, and in rapid succession at the same time, and in general constituted one transaction, and in order fully to explain or describe the assault of either of the defendants and to show the intent and concert of action of each of the defendants in the assault made by each of them, it was necessary and proper to admit in evidence the prosecutrix' testimony as to the assaults by each defendant, at the same time and place. The jury's verdict was a general verdict and, therefore, if the evidence was sufficient to prove either count of the indictment the verdict should not be disturbed. It is an established rule in this State that where A is charged as principal in the first degree with the commission of a felony, and by the same count B is charged as principal in the second degree as being present, aiding, abetting, etc., the commission of such felony, each may be convicted, though the evidence establishes that B actually committed the felony and that A was present aiding, abetting, etc., the commission thereof. And it is also a well established rule that where two or more are charged in the same count as principals in the first degree with the commission of a felony it is permissible to show under such charge that one defendant actually committed the felony and that the other was present aiding, abetting, etc., in the commission thereof, and both may be convicted under such charge and proof. Section 776.01 Florida Statutes 1941, provides: "Whoever aids in the commission of a felony, or is accessory thereto, before the fact, by counseling, hiring, or otherwise procuring such felony to be committed, shall be punished in the same manner prescribed for the punishment of the principal felony." See Albritton v. State, 32 Fla. 358, 13 So. 955; Wester v.

State, 141 Fla. 374, 193 So. 303, Neumann v. State, 116 Fla. 98, 156 So. 237 and Pope v. State, 84 Fla. 428, 94 So. 865; Ferguson v. State and Maxwell v. State, 168 Fla. 345, 28 So. (2nd) 427; Warren on Homicide, Vol. 2, page 135, State v. Payne, 10 Washington 545, 39 Pacific 157, Ross v. Com. (Ky.) 9 Southwestern 707, Wharton Criminal Law, 12th Ed., Vol. 1, Sec. 259, Joyce on Indictments, Sec. 428, page 526; Bishop's Directions and Forms, 2nd Ed., Sec. 115; McClain's Criminal Law, Vol. 1, Sec. 213; Wharton on Homicide, 3rd Ed., Sec. 581, page 887; Chitty's Criminal Law (1819), Vol. 1, page 267; U. S. v. Douglas, 2 Blatchf. 207, Fed. case 14989; Lowe v. State (Ga.) 53 Southeastern 1038; Lumpkin, Judge Bradley v. State (Ga) 57 Southeastern, 237, Bishop's New Criminal Procedure, 2nd Ed., Vol. 3, Secs. 3 and 957; Bishop's New Criminal Procedure, 2nd Ed., Vol. 1, Sec. 332 (5), and Shivley v. Commonwealth (Ky.) 14 Southwestern 2nd, 205.

Appellant's Sixth Question is: "Did not the Court err in admitting the testimony of the Court reporter as to confessions of the defendants without first conducting a preliminary inquiry in the absence of the jury as to the admissibility of such confessions?"

At the close of defendants' testimony, the Court reporter, Joseph S. Fishkind, was called as a witness by the State and testified that he stenographically reported the statements made by each of the defendants to Deputy Sheriff Golitz on the morning of February 19th at the Sheriff's office in Hillsborough County, and had transcribed his said notes. At that point, on the motion of counsel for defendant, consented to by the State Attorney, the Court instructed the jury, "This is being done for the purpose of impeachment and is done for the purpose of giving you the benefit of contradictory statements, if any, and to show what weight or credibility you will give to the testimony of the witnesses here today." And thereupon, the Court reporter proceeded to read from the aforesaid transcript the warnings given to each defendant by Deputy Sheriff Golitz before they made their respective statements, from which it appears that each defendant was fully warned and advised as to his constitutional rights, that he did not have to make a statement, and that any statement

he should make should be made freely and voluntarily, and thereupon, the witness continued to read from the aforesaid transcript the questions asked by Deputy Sheriff Golitz to each defendant and the answers made by each defendant, and no other objection was made by counsel for the defendant to the admission of such testimony. The statements of appellant Hernandez, and defendant Rodriguez were neither confessions nor admissions, but the statement of appellant Jimenez, when considered as a whole we think amounted to at least an admission of incriminating facts. However, as above stated, the Court instructed the jury that the evidence of this witness could only be considered by the jury for impeachment purposes, and we find nothing in the record to indicate that this evidence was by the jury considered for any other purpose. The established rule in this State requires that the question of whether admissions or confessions are made freely and voluntarily is for the Court to determine and to enable it to do this, there should be a preliminary investigation by the Court and this examination should be made in the absence of the jury. See Steiner v. State, 83 So. 565. It is dangerous for a trial court to depart from this rule. In the case at bar, the Court did not conduct a preliminary investigation in the absence of the jury to determine whether the statements of the several defendants made to the Deputy Sheriff were made freely and voluntarily, but as stated above, the record clearly shows that Deputy Sheriff Golitz fully advised and warned each of the defendants as to their constitutional rights, and that the statement made by each defendant was freely and voluntarily made, and were admitted in evidence for impeachment purposes only. Therefore, no reversible error was committed by the trial Court in this regard.

Appellants' Seventh Question is: "Should the judgment of conviction in the case at bar be allowed to stand?"

From what has already been said it follows that this question must be answered in the affirmative.

We have carefully examined the entire record and no reversible error having been made to appear, the judgments appealed from should be affirmed, and it is so ordered.

THOMAS, C. J., TERRELL and CHAPMAN, JJ., concur.