RAWLS, Judge.
The grand jury of Volusia County, Florida, indicted appellant-defendant, Robert J. Washington, upon the following charge:
“ * * * that Robert J. Washington * * * did unlawfully ravish and carnally know Daisy Lavern Eady, a female who was then and there over the age of ten years, and did so ravish and carnally know her by force and against her will, contrary to and in violation of Section 794.01, Florida Statutes * * * ”
Washington was tried upon,the foregoing indictment and convicted of assault with intent to commit rape, a lesser included offense. He now appeals the judgment of conviction and asserts that the trial court erred, inter alia, (1) by instructing on lesser included offenses when the defendant objected to such instructions and the evidence was insufficient to support same, and (2) in limiting testimony as to the character of defendant.
Relevant facts are: The prosecuting witness, Daisy Lavern Eady, was 19 years old at the time of the alleged attack. Daisy *744 is the mother of two children who live with her estranged husband’s parents. On the night of October 20, 1969, Daisy was visiting on her neighbor’s front porch with a friend, Gloria Davis (age 20), and Daisy’s sister. Around midnight, defendant stopped by and sat on the porch with the young ladies and joined in the conversation. Shortly thereafter Daisy announced that she was going for a walk. She asked Gloria to walk to the corner with her, which invitation was declined. Defendant volunteered to accompany Daisy and, for some reason not disclosed by this record, the two walked beyond the announced corner and proceeded to the front gate of a schoolyard. Daisy testified that she separated from the defendant at this point, and was proceeding home by way of a shortcut through the unlighted schoolyard, whereupon defendant followed her and told her that there was an opening in the east side of the fence. She walked over to the east side, found no opening, and began walking across the schoolyard in order to go out the back gate. Daisy testified that defendant then called her twice, saying, “Come here, Daisy”, pointed a gun at her, “embraced me from behind”, and carried her between the sheds on the east side of the schoolyard. Daisy could not recall what happened to the gun other than seeing it pointed at her momentarily. She testified that the defendant threw her on the ground, choked her, and penetrated her against her will. She screamed at the outset, screamed again when she was thrown on the ground and screamed again a third time fifteen minutes later. According to Daisy, penetration is another word for intercourse, and the defendant stayed inside her for “about ten minutes.” Daisy also testified that, while they were on the ground, defendant removed some dog tags from around his neck because “they were getting in his way so he took them off.” During this period of time she heard one shot fired which she thought might have been from defendant’s gun. Her clothes were not torn, she was not bleeding, and she had not scratched the defendant; however, her hair was messed up and her clothes were rumpled. An examination by a physician revealed the absence of any spermatozoa.
Three men who lived in the neighborhood testified as to incidents which occurred on the evening in question. Their composite testimony was that they heard two shots, one or two screams, jumped into a pickup truck and in a minute and a half reached the schoolyard where they saw Daisy who was crying, and her clothes and hair were “messed.” She told these witnesses she had been raped.
Other testimony was that Daisy had tried to get the State to dismiss the charges against defendant and that on a prior occasion she had been mad at defendant because he told “dirty stories” on her. A former roommate of Daisy’s testified that, prior to the subject incident, she had seen Daisy and defendant in Daisy’s bed together and had asked her, “Daisy, how could you lay up in bed with your best girl friend’s boy friend ? ” Several witnesses testified that Daisy had a bad reputation in the community.
Defendant testified that on October 20, 1969, he had gone to the tavern and to a party with some friends and they had dropped him off at Gloria’s house about 11:00 p. m. He claimed that about 11:30 p. m. Daisy left and he started to walk her home. As they approached the corner they saw a group of boys standing under the streetlight. Daisy told him that if he would walk her home and not let the boys “bother her,” she would sleep with him. As they cut across the schoolyard some headlights approached and Daisy started to run — he ran the other way. Defendant testified that he did not have a gun with him; that he did not have intercourse with Daisy; that he probably would have if they hadn’t been interrupted; and that he had slept with Daisy on previous occasions in her home.
The posture of the evidence presented to the jury for its consideration *745 could justify and support only one of two opposite conclusions. If the jury accorded the State’s evidence as substantial and credible, it would have been compelled to have found defendant guilty of forcible rape as charged in the indictment. If on the other hand the jury rejected the State’s evidence and elected to believe that adduced by defendant, then it would have been compelled to have found defendant not guilty. There is not one shred of evidence from which the jury could have properly found the defendant guilty of any offense less than the rape with which he was charged. The verdict of guilty for a lesser offense is not supported by the evidence and cannot be sustained on appeal.
The subject of lesser included offenses is not a new one in this jurisdiction. Sanders v. State, 70 So.2d 369 (Fla.1954), involved a defendant indicted and tried for murder in the first degree. The Supreme Court, in affirming the conviction of manslaughter, stated: “Such a charge comprehends all other degrees of homicide. The jury was warranted in returning a verdict for one of the lesser degrees of homicide.” In Jowers v. State, 81 Fla. 803, 88 So. 880 (1921), the Supreme Court noted that an indictment charging that defendant did “unlawfully ravish and carnally know and abuse a female child under the age of 10 years” was sufficient to include the offense of assault with intent to commit rape. Other cases, which are discussed later, seem to uniformly hold that an indictment, or information, charging an offense is sufficient to apprise a defendant that he is being likewise called upon to defend all lesser included offenses. Such a conclusion, in our opinion, violates elementary concepts of due process of law. As disclosed by the myriad opinions upon the subject, appellate courts have encountered difficulty in defining which offenses upon particular facts constitute lesser included offenses. Query: If appellate courts are unable to unravel the charges encompassed in.a three-line information or indictment, how can it be presumed that a defendant or his attorney can read .such charge and be fully apprised of what charges the defendant is called upon to defend? We think due process and fair play should require the State to specifically charge in the alternative the grievances it has against the defendant. Allison v. State, 162 So.2d 922 (Fla.App. 1st 1964). See also, Holliday v. State, 104 So.2d 137 (Fla.App. 1st 1958). However, in all candor, we must admit that such opinion is contrary to the existing case law upon the subject.
We revert to the controlling question posed by defendant. He stands at the rail of justice charged with the crime of rape and objects to the jury being instructed upon any lesser crimes. The language of many opinions infer that charges upon lesser included offenses are for the benefit of the defendant, and being such, are subject to being waived by him if instructions as to such offenses are not requested by the defendant. It necessarily follows, that if such instructions can be waived, they are not mandatory. Seemingly, the rule actually is that when the defendant requests instructions on lesser included offenses, the trial judge has a mandatory duty to give such instructions. The duty to instruct is coextensive with the defendant’s request.
In Lindsey v. State, 53 Fla. 56, 43 So. 87 (1907), the defendant urged that the trial court should have, sua sponte, given a charge on the law as applied to the lesser charge of aggravated assault. The Supreme Court, in rejecting this contention, stated:
“ * * * if a party wishes to avail himself of the omission of the court to charge the jury on any point in the case, or on all grades of homicide to which the evidence is reasonably applicable, he must ask the court, at the time, to give the instruction desired * * * otherwise, he will not be permitted to assign the omission to so charge as error.”
The court, in considering this question, apparently was of the opinion that an instruc *746 tion on a particular lesser included offense might inure to the benefit of the defendant.
Jimenez v. State, 158 Fla. 719, 30 So.2d 292 (1947), is considered as a landmark case upon the subject. Jimenez was charged in an indictment with the crime of rape and was convicted of assault with intent to commit rape. Jimenez’s primary contention, like this appellant’s, was that the evidence showed that he was either guilty of rape or that he was innocent, and thus the trial court erred in instructing the jury as to lesser included offenses. The Supreme Court took note of the long-established principle of law that “The general rule is that accused may be convicted of a lesser degree of an offense, or a lesser included offense, even though the proof shows that he was guilty of the greater degree or greater offense”. However, the court in considering appellant’s contention that the jury was without power to convict him of the offense of assault with intent to commit rape because the evidence was sufficient to sustain a conviction of rape, also stated:
“ * * * it appears from the record that at the conclusion of the testimony the Court in the absence of the jury submitted his proposed charges to counsel for appellants and no objection was made thereto * * * nor did the appellants complain of the charges given by the Court. * * * They had ample opportunity to object to such charges * * * the record shows that the jury twice returned to the Court Room for further instructions and at no time did appellants object to the charges now complained of. * * * So we hold that it was the duty of the trial court to charge the jury as to the lesser offense of assault with intent to commit rape, which offense was in law included in each count of the indictment. * * * ” (Emphasis supplied.)
Clearly, the conclusion of the Supreme Court was predicated upon the preceding sentences in the same paragraph emphasizing the failure of defendants to object to the trial judge’s instruction as to the lesser offense of assault with intent to commit rape. By stressing defendant’s failure to object to the subject instruction, it appears that the court might well have reached a contrary conclusion if timely objection had been made.
Other cases which reason that the charge on lesser included offenses are for the benefit of the defendant are: Lindsey v. State, 53 Fla. 56, 43 So. 87 (1907); Allison v. State, 162 So.2d 922 (Fla.App. 1st 1964); Flagler v. State, 198 So.2d 313 (Fla.1967); Hand v. State, 199 So.2d 100 (Fla.1967); and Brown v. State, 206 So.2d 377 (Fla.1968).
In Lindsey, the Supreme Court stated: “It is the settled practice in this state, however, that if «a party wishes to avail himself of the omission of the court to charge the jury on any point in the case, or on all the grades of homicide to which the evidence is reasonably applicable, he must ask the court, at the time, to give the instruction desired, by writing out the instruction desired and presenting same to the judge; otherwise, he will not be permitted to assign the omission to so charge as error.”
In Allison, this court states: “In the following cases the appellate courts of other states have held that a defendant, charged with assault with intent to commit rape, was entitled to have the trial court charge the jury, that, if they did not find the defendant guilty of the crime charged, they might consider the evidence to determine whether the defendant is guilty of the lesser included offense of assault or assault and battery: [cases cited omitted].” (Emphasis supplied.)
In Flagler, the Supreme Court stated: “Here there was no request for the charge [as to larceny] in writing; there was no request at all. Moreover, the judge meticulously discussed proposed charges and two were agreed upon, robbery and alibi. Counsel for the petitioner had no objection *747 to the latter and voiced none to the former.”
Mr. Justice Ervin, speaking for the Supreme Court in Hand, stated: “Our approach to this question involves the concept of due process of law and trial fairness. * * * In the recent case of Flagler v. State * * * There had been no request whatsoever for such instruction. This Court affirmed the lower court judgment and held that request must be made for charges on lesser included offenses.” The opinion further stated: “In the instant consolidated cases the trial courts became obligated upon the requests of each defendant, to give the requested charges on the lesser included offense of larceny.”
In the Brown case, the Supreme Court said: “Under the statute, the trial judge should, and if requested must, instruct on all lesser degrees of the offense * * * ”
The State has urged that the failure of a trial judge to instruct on lesser included offenses, in the absence of a request by defendant, does not constitute reversible error, and such proposition has been sustained. Burkhead v. State, 206 So.2d 690 (Fla.App. 3d 1968), and Grizzell v. State, 233 So.2d 669 (Fla.App. 1st 1970). A review of the authorities cited and fundamental principles of due process leads us to the conclusion that since instructions as to lesser included offenses can be waived by the defendant, then he may, upon timely objection, insist that he be tried upon the charges set out in the charging instrument. To hold otherwise would mean that, in the absence of defendant requesting instruction on lesser included offenses, the State has the option to instruct on the offenses or to have the jury consider solely the offense charged. As pointed'- out by the defendant, the instructions as to lesser included offenses in the case sub judice, which were objected to by him, granted to the jury six choices for conviction and only one choice for acquittal.
As to defendant’s second point, it is apparent from the record that the trial judge unduly limited defendant in proffering witnesses as to his character. After one character witness had testified on behalf of the defendant, the trial judge precluded the testimony of an additional proffered character witness because it would be cumulative, stating: “I have notes of testimony of the witnesses and I have at least three that have testified to his good reputation.” The record does not sustain this observation by the trial judge since only one character witness had been presented by defendant. In Eubanks v. State, 179 So.2d 256 (Fla.App. 1st 1965), the defendant was indicted and tried upon a first degree murder charge. Two youthful eyewitnesses testified for the State. Defendant, the only other eyewitness, gave testimony which was in conflict with the State’s eyewitnesses. The trial judge struck the testimony of three character witnesses proffered by defendant. This court, in remanding for a new trial, observed that the credibility of the defendant and the other two eyewitnesses was vital to the defense, and further stated: “The jury did not find the defendant guilty of the maximum offense charged and we can only speculate as to whether or not the proffered evidence would have had any effect on their verdict.”
Daisy’s character and that of the defendant was a vital issue confronting the jury in the instant cause. Although the limiting of cumulative testimony is ordinarily a matter of discretion in the conduct of a trial by the judge, such discretion is not unbridled. Were it not our conclusion that defendant was entitled to be discharged under the first point raised, we would unhesitatingly direct that a new trial be granted for the reason that the trial judge unduly restricted defendant in calling witnesses to testify as to his reputation.
We conclude that the trial judge erred in instructing the jury, over the objection of defendant, as to lesser crimes other than that contained in the charging in *748 strument. Since the jury failed to convict defendant of the offense charged in the subject indictment, he is entitled to be discharged.
Reversed.
CARROLL, DONALD, K., Acting C. J., and WIGGINTON, J., concur.