188 So.2d 364 (1966)
Bobby Ray HAND, Appellant,
v.
The STATE of Florida, Appellee.
No. G-300.
District Court of Appeal of Florida. First District.
June 30, 1966.
Rehearing Denied August 3, 1966.
T. Edward Austin, Jr., Public Defender, and Louis O. Frost, Jr., Asst. Public Defender, for appellant.
Earl Faircloth, Atty. Gen., and James G. Mahorner, Asst. Atty. Gen., for appellee.
CARROLL, DONALD K., Judge.
The appellant was charged with and convicted of the crime of robbery by the Criminal Court of Record of Duval County, and has appealed from the judgment of conviction entered by that court, based upon a guilty verdict returned by the jury at his trial.
The question presented for our determination in this appeal is whether the trial *365 court committed reversible error in: denying the appellant's oral request for a jury instruction on the lesser included offense of larceny; admitting testimony concerning the convict clothing which the appellant was wearing when the crime was committed; or asking the appellant's counsel at the conclusion of the trial and in the presence of the jury, "Does the defense have any testimony?"
Briefly stated, the evidence at the trial established the following facts: On the morning of August 14, 1964, the appellant and several other prisoners, all wearing convict uniforms, escaped from a Clay County prison camp, and afterwards entered the trailer home of one Delbert Irons, whose automobile and trailer were parked in Duval County. By force of arms the convicts removed from the trailer a .22 pistol, a transistor radio, and some clothing. The appellant then drove away from the trailer home in Irons' automobile. On the evening of the next day the appellant and another convict were seen by a Duval County patrolman. The appellant tried to escape from the officer, but shortly afterwards was discovered and arrested while lying face down over a pistol which was identified by Irons as the weapon taken from his trailer home.
Irons' trial testimony was uncontradicted that on the date in question he was sitting in his trailer home with his wife and their two children, one six months old and the other one and a half years old, when six men, including the appellant, entered Irons' trailer home. The men, who were dressed mostly in prison clothes, ordered Irons to go to his bedroom and sit on the bed, and asked him for some clothes so they could change into them. They also found and took Irons' pistol and transistor radio. The children were placed on the bed with their parents and then the men "tied us up with bed sheets." During these events the appellant held in his hand a "big" shotgun which looked to Irons "like any other prison chaser shotgun." The men asked Irons for the keys to his car and he replied that they "must be in the car." Irons also testified that the value of his transistor radio was $16, his pistol $39.95, his car $2,775, and his shirt, which was taken by the appellant, $3. Irons did not surrender these articles voluntarily, but he let the men have them "for fear my wife and kids or myself might come to harm."
The crime of robbery in this state is defined in Section 813.01, Florida Statutes, F.S.A., as follows:
"Robbery defined; penalties.  Whoever, by force, violence or assault or putting in fear, feloniously robs, steals and takes away from the person or custody of another, money or other property which may be the subject of larceny, shall be punished by imprisonment in the state prison for life or for any lesser term of years, at the discretion of the court."
If a person is charged with robbery under this statute and the jury reasonably finds from the evidence that the stealing was accomplished without force, violence, assault, or putting in fear, the jury may, under proper instructions from the trial court, find the defendant guilty of the lesser included offense of petty or grand larceny, as defined in Section 811.021, depending upon the proven value of the article or articles stolen  providing, of course, that the indictment or information contains averments sufficiently alleging all of the essential elements of larceny and that the trial evidence is reasonably susceptible of the conclusion that all of the essential elements of larceny have been established. See our recent decisions in Allison v. State, Fla.App., 162 So.2d 922 (1964) and Stewart v. State, Fla.App., 187 So.2d 358, opinion filed June 14, 1966.
It seems to us, however, that in the case at bar the evidence was not reasonably susceptible of an inference by the jury that the articles stolen from Irons were taken without force, violence, assault, or putting in fear. Irons' testimony was uncontradicted *366 that the appellant held a shotgun in his hand and that the six men assaulted Irons, his wife, and their two babies by physically tying them up in bed sheets.
In addition to the foregoing reason why the trial court properly did not charge the jury concerning the lesser included offense of larceny the appellee in its brief contends that such failure to charge was proper because the appellant failed to request in writing that such a charge be given, as required by Section 918.10, Florida Statutes, F.S.A. Since we have above held that such a charge would not have been proper under the state of the evidence, we need not pass upon the merits of this contention, although we note that the Florida Supreme Court has held that the said statutory requirement is not a mere formality. See Foreman v. State, Fla., 47 So.2d 308 (1950) and Brunke v. State, 160 Fla. 43, 33 So.2d 226 (1948).
As mentioned above, the second point raised by the appellant in this appeal is whether the admission of evidence concerning the appellant's mode of dress (convict clothing) was "material as establishing a motive for the theft of clothing of a nonindicting nature."
In his brief the appellant contends not only that the trial court committed error by admitting into evidence the testimony concerning the type of clothing worn by the appellant at the time of the alleged robbery, but also committed further error by giving certain prejudicial and confusing instructions to the jury regarding that testimony.
As stated above, at the trial Irons, over defense objection, was allowed to testify that the six men who raided his trailer home wore convict or prison clothing. At the end of the trial, however, the court included the following in its jury instructions:
"I am going to further charge you, Gentlemen of the Jury, that you are to disregard that portion of the testimony that was allowed to go before you, some of it inadvertently and some of it apparently unavoidably, concerning the uniforms that were worn  was worn by the defendant at the time and the others that came in with him, apparently at least according to this testimony the uniforms which they were wearing  there was some reference to the effect they were uniforms of escaped convicts or convicts' uniforms. You are to disregard this testimony insofar as it bears in any way upon the guilt or innocence of this defendant as pertaining to this charge of robbery. Regardless of what kind of uniform he is wearing the charge is robbery by this defendant on this date. These facts were only allowed to go before you as it may touch upon or explain and corroborate some of the other evidence and perhaps supply motive for the robbery if you choose to believe the evidence of robbery. This is the sole purpose that it was allowed to go before you and I will ask you to do the best you can in disregarding how they were dressed as it may affect the guilt or innocence question."
There seems little doubt that the said testimony about the types of clothing worn by the appellant and the other five men when they entered Irons' trailer home was relevant to the question of their motivation for committing the robbery of the articles stolen. In the logical words in the appellee's brief, "* * * one who is dressed in convict clothing has a motive for the theft of more normal attire so as to facilitate his continued secretion from law enforcement officials." Similarly, it could appropriately be said that the theft of the other articles taken  the transistor radio, the pistol, and the automobile  might well help the convicts to remain at large. The appellee cites Wigmore on Evidence, vol. 1, Section 118, for the proposition that motive is always relevant.
While we agree that the testimony concerning the clothing worn by the appellant was relevant to the question of the appellant's motive, as well as to other *367 questions in the prosecution, such as whether Irons and his family were put in fear, we recognize the problem created in the administration of criminal justice because of the possibility that the jury might find him guilty because he had evidently committed other crimes. Under these circumstances, the fairest thing to do, we think, is to do exactly what the trial court did here and carefully instruct the jury that they should not consider the evidence of the convict clothing in determining the accused's guilt or innocence of the alleged crime for which he was being tried. While there can be no absolute guarantee that the jury will follow such an instruction, it must be presumed that they did so and lived up to their solemn obligation as citizen-jurors in the absence of any indication to the contrary, and we find no such indication in the record before us. In any event, we find that this second point on appeal lacks substantial merit.
The appellant phrases his third point on appeal as follows: "Did the court err in questioning defence counsel at the conclusion of the trial in the presence of the jury by asking him `Does the defense have any testimony?' and thereby comment indirectly on the fact that the appellant failed to take the stand and testify in his own behalf?"
This point is based, of course, upon the fundamental right against self-incrimination secured by the Fifth Amendment to the United States Constitution and by Section 12 of the Declaration of Rights of the Florida Constitution, F.S.A. The appellant also invokes the following provisions of Section 918.09, Florida Statutes, F.S.A.:
"In all criminal prosecutions the accused may at his option be sworn as a witness in his own behalf, and shall in such case be subject to examination as other witnesses, but no accused person shall be compelled to give testimony against himself, nor shall any prosecuting attorney be permitted before the jury or court to comment on the failure of the accused to testify in his own behalf, and a defendant offering no testimony in his own behalf, except his own, shall be entitled to the concluding argument before the jury."
The transcript of the trial proceedings shows that, after the State had closed its case, the trial court, in the presence of the jury, asked the counsel for the appellant, "Does the defense have any testimony?" and the said counsel answered, "No, your Honor." The jury was then excused and the appellant moved for a mistrial on the ground that the court had indirectly commented on the fact that the appellant had failed to take the stand by asking his counsel the quoted question.
While the appellant concedes in his brief that the said question was not a direct comment on the appellant's failure to testify in his own behalf, the appellant contends that it "alerted the jury to ponder as to why he did not testify."
In his argument under this third point on appeal the appellant invokes the basic principle that it is incumbent upon a court to conduct a trial in a fair and impartial manner, and we are of the opinion that in the case at bar the court did conduct the trial in that manner. The question he asked of the defense counsel was a routine question customarily asked by trial courts to assure defendants of their fundamental right to present evidence in support of their positions in the case. Even the most inexperienced juror would probably be puzzled if the trial court failed to offer the opportunity to the defendant to present evidence in his own behalf. In any event, we find no merit in this third point on appeal.
The appellant having failed to demonstrate error in this case, the final judgment appealed from must be and it is
Affirmed.
WIGGINTON, Acting C.J., and JOHNSON, J., concur.