196 So.2d 905 (1967)
Eddie Thomas McCLENDON, Appellant,
v.
STATE of Florida, Appellee.
No. 35090.
Supreme Court of Florida.
March 15, 1967.
*906 Donald P. Kohl, West Palm Beach, for appellant.
Earl Faircloth, Atty. Gen., and T.T. Turnbull, Asst. Atty. Gen., for appellee.
PER CURIAM.
This is an appeal from a judgment of conviction and death sentence entered in the Circuit Court in and for Palm Beach County. Reference to the case of Newman v. State, Fla., 196 So.2d 897, will disclose this case arose out of the same circumstances involved in the Newman case.
*907 The record reflects that on the evening of June 2, 1965 about 10:00 P.M., three men came upon the victim and her fiance, who were parked along the beach in Boca Raton, Florida. Appellant McClendon allegedly was one of those who held the victim's fiance at gun point some distance down the beach while the other two men, whom the victim positively identified, raped her two times each. They then exchanged places with the Appellant, who then allegedly raped the victim when no one else was present. The victim never identified the Appellant. She stated that she could not be positive he was the third man.
Appellant was individually indicted for the crime of rape of Judith Fertig, as were Richard Carter Newman and Harold Durell Jones. Newman and McClendon were tried separately the week of October 4, 1965 in West Palm Beach, Florida. Newman was tried first, then McClendon. Both were found guilty and received no recommendation of mercy from their trial juries and were sentenced to death. Jones was tried six weeks later, found guilty, but received a recommendation of mercy and was sentenced to life imprisonment.
The first case (Newman's) attracted extensive radio, TV and newspaper publicity in Palm Beach County. Since Appellant's trial was scheduled immediately thereafter, he moved for a continuance or change of venue because he feared such publicity would adversely affect a fair trial in his case. His motion was denied.
While individually indicted and tried, evidence of the State at the trial was offered to prove that Appellant committed the rape in association with Newman and Jones. The names of Richard Carter Newman and Harold Durell Jones, two dark-complexioned Negroes who had been positively identified by the victim, were brought to the attention of the jury and at one point in the trial the State brought both of them into the court room in the presence of the jury where they were identified by the victim. Appellant is a very light-complexioned Negro.
Evidence connecting Appellant with the crime was his confession, which the trial judge found to be voluntary, and testimony of witnesses relating to his presence and acts at the scene of the commission of the crime and will be more fully discussed later.
At the conclusion of the trial the judge gave the jury the same instruction based on F.S. § 776.011, F.S.A., relating to principals and aiders and abettors, as was given in the Newman case, to the general effect that if the jury believed any one of the three defendants raped the victim with the other two aiding and abetting all were equally guilty.
The Appellant raises eight points for consideration, viz.:
1. Did the trial court commit prejudicial error in denying the motion for continuance or in lieu a change of venue, forcing Appellant's trial immediately after the Newman trial which had attracted extensive news media publicity?
2. Was it error where the Appellant was separately indicted and tried to allow references in the trial testimony to, and the bringing before the jury the other two Negro defendants who were there identified by the rape victim?
3. Was it error to give the said instruction relating to F.S. § 776.011, F.S.A., which indicated the jury could find the Appellant guilty if it found the other two defendants, who were not indicted or tried with the Appellant, committed the rape with Appellant present aiding and abetting?
4. Was it error to refuse to give Appellant's requested instructions, including related and lesser offenses?
5. Was it error to permit the introduction into the trial evidence: (a) State's Exhibit No. 8 (a gun); (b) State's Exhibit No. 10 (victim's dress); (c) State's Exhibit No. 12 (confession), (d) permitting witnesses to testify whose names had not been *908 furnished Appellant prior to trial pursuant to order of court.
6. Was it error to permit the State Attorney to "testify" in final argument as to the deterrent effect of capital punishment while refusing defense counsel the opportunity to argue the effects of capital punishment as a deterrent in states where it has been abolished?
7. Was the evidence sufficient to convict under the subject indictment in view of the lack of positive identity?
8. Was F.S. § 794.01, F.S.A., unconstitutionally applied to Appellant, a Negro defendant charged with the rape of a white adult female?
Point 1. Appellant, in support of his motion for continuance or in lieu thereof a change of venue, brought to the attention of the trial court that the Newman case which immediately preceded Appellant's scheduled trial had been the subject of extensive news coverage in the three newspapers and other news media that circulate or are broadcast in Palm Beach County; that articles in the newspapers referred to all three defendants and informed that Newman, one of them, was found guilty without a recommendation of mercy. Appellant presented the trial court seven exhibits from said newspapers, viz., excerpts of more than ninety-five column inches of news coverage, exclusive of headlines.
In arguing that the publicity of the Newman trial prejudiced his trial immediately following, Appellant refers to the fact that Harold Durell Jones, who he asserts was the "ringleader" of the assailants, received a recommendation of mercy in his trial held some six weeks later after the publicity had subsided.
Appellant relies primarily upon Shepherd v. State of Florida (1951), 341 U.S. 50, 71 S.Ct. 549, 95 L.Ed. 740, in which the Supreme Court of the United States reversed the conviction of several Negro defendants accused of the rape of a 17-year-old white female in Lake County, Florida. Mr. Justice Jackson, with whom Mr. Justice Frankfurter joined, concurred in the reversal, saying:
"But prejudicial influences outside the courtroom, becoming all too typical of a highly publicized trial, were brought to bear on this jury with such force that the conclusion is inescapable that these defendants were prejudged as guilty and the trial was but a legal gesture to register a verdict already dictated by the press and the public opinion which it generated."
Our inspection of said newspaper excerpts does not lead us to the conclusion they were so flagrant and prejudicial as to render the Appellant's trial unfair. The articles appear to be factual and not sensational, and not beyond the bounds of commonly accepted news media reportorial standards which are guaranteed under freedom of the press. They responsibly informed the public of the facts of the Newman trial within legitimate limits which did not in our opinion render unfair the immediately succeeding trial of Appellant. The coincidental circumstance that Newman was tried first and the news media reported his case in the factual manner indicated does not warrant the presumption Appellant was prejudiced thereby or the jurors in this case were unfairly influenced against him.
The foregoing circumstances are not of the category of those in Shepherd v. Florida, supra, where community passions had been aroused to a high pitch by the news reports of the rape involved, resulting in riots and the burning of Negro houses and churches.
Nor is this case comparable with the recent case of Sheppard v. Maxwell, 384 U.S. 333, 86 S.Ct. 1507, 16 L.Ed.2d 600, where pre-trial and concurrent trial publicity included many facts manifestly unfavorable to the defendant which were never presented in court. In the instant case all that was publicized was substantially reproduced in the trial evidence for the jury to evaluate pro and con. The *909 news media reports of the evidence adduced at the Newman trial were abbreviated in their content and were not materially different from the evidence of facts submitted by the State to prove the alleged crime of rape at Appellant's trial. In Sheppard v. Maxwell there were harmful extraneous influences which the Supreme Court of the United States characterized as "massive, pervasive and prejudicial publicity and disruptive influences attending the prosecution." No similar showing of unfairness has been made in this case.
In Sheppard v. Maxwell, supra, the press had flatly and repeatedly proclaimed the guilt of the accused as being unquestioned. The trial therein was found to be conducted in a carnival atmosphere; news people and photographers so overwhelmed the court room as to distract and disturb the privacy and composure of the defendant and his counsel.
Though claiming that the publicity attendant on the preceding Newman trial was prejudicial to his immediately succeeding trial, Appellant did not demonstrate from his voir dire questioning of veniremen or from his challenges, peremptory or for cause, that the panel had been adversely conditioned psychologically by the news media from fairly trying the case.
Against the veniremen from whom the jury was chosen, the defense directed only six peremptory challenges. The panel of prospective jurors was not exhausted; several remained after the jury was chosen.
Our Court in the case of Singer v. State, Fla., 109 So.2d 7, where it viewed a situation more drastic insofar as a defendant's fair trial was concerned than in the present case, concluded there that the trial judge did not commit error in refusing to grant a change of venue. There, as here, prospective jurors were questioned as to whether they were biased by the news media reports of the Singer case. The trial judge concluded those chosen were not prejudiced.
We do not find that the trial court abused its discretion in denying the motion for continuance or change of venue.
Point 2. Although indicted and tried separately, the Appellant contends that in practical effect he was tried as an accessory or aider or abettor to other co-defendants; that from the outset of the trial the state continually questioned the victim regarding the identity of her three alleged assailants; that she identified Richard Carter Newman and Harold Durell Jones as two of them when they were brought into the courtroom during Appellant's trial; that the defense objected to their being brought in and identified because they are dark-complexioned Negroes while Appellant, a Negro, is light-complexioned and could pass as a white man; that the defense offered to stipulate with the State that the victim could identify Newman and Jones as two of those present at the time the rape was committed, contending to the trial judge their physical identification before the jury as Negroes who committed the crime together with Appellant would inflame and prejudice the jury against Appellant, but that the State refused to stipulate and the trial judge permitted the physical identification of Newman and Jones.
We cannot assume the bringing of Richard Carter Newman and Harold Durell Jones physically before the jury where they were identified by the victim as her assailants ipso facto had the effect of prejudicing the jury against Appellant because Newman and Jones are Negroes and the Appellant is white-complexioned and would have passed for a white man had he not been linked by association with Newman and Jones as participants in the commission of the crime. In our opinion it was not legally incumbent upon the State to stipulate with the defense that Newman and Jones were participants in the crime in order not to disclose to the jury they are Negroes. It lay within the discretion of the State whether to stipulate or not. Moreover, it stands to reason the State had the right to have Newman and Jones *910 identified by the victim as two of the assailants who raped her rather than accept a stipulation to the effect they were merely present at the scene of the crime. In this particular case the State must have concluded the physical identification of Newman and Jones more emphatically established guilt by association before the jury than would the stipulation proposed by the defense.
If we were to accept the contention of Appellant that the racial identity of persons charged with crime singly or in association with others should not be disclosed at trial because of the possibility of prejudice or unfairness to the defendant we would overly emphasize the element of racial discrimination in the trial jury process without reasonable basis for its justification, as well as unduly hamper presentation of relevant evidence.
The right of the prosecution in making out its case to have the alleged participants in a crime physically identified is not to be denied because they are Negroes. In the law of evidence the incidental factor of one's race or national origin does not override the right to establish by direct evidence the identity of the person involved.
In 23 C.J.S. "Criminal Law" § 968, it is said:
"[T]he presence in the court room of other persons under indictment for the same offense, but who are to be separately tried, is a matter for the discretion of the court."
Ordinarily defendants who allegedly join in committing a crime do not object to separate trials, particularly when one is tried subsequently to another participant and gains the knowledge of what occurred in the prosecution and defense at the earlier trial. Here separate trials were afforded pursuant to separate indictments, and Appellant made a motion for a separate trial but contends that he has been treated unfairly because evidence of a jointly committed crime was presented by the State in his case, although he was a singly indicted defendant.
In Newman v. State, supra, we did not find error occurred merely because evidence of a jointly committed crime was presented in a case of a singly indicted defendant. It is only where a defendant is taken by surprise by evidence linking him as a joint participant or aider or abettor in a crime that he would have just cause for complaint. Since the factual situation herein is essentially the same on this point as in Newman v. State, supra, we do not find Appellant was taken by surprise and find no error was committed.
Point 3. This point was considered and ruled upon in the case of Newman v. State, supra. For the same reasons expressed in said case, we reject the contention of Appellant on this point. In addition to what was said in Newman v. State, see Jacobs v. State (Fla.App.), 184 So.2d 711.
Point 4. The Appellant contends the trial court erred in refusing to grant all of the Appellant's requested instructions, including related and lesser offenses.
The trial judge included only instructions on the lesser offense of assault with intent to commit rape along with its other instructions, refusing to include instructions on bare assault and assault and battery. In Jimenez v. State, 158 Fla. 719, 30 So.2d 292, our Court held it necessary that instructions on assault to commit rape as a lesser included offense within the crime of rape be given as was done in the instant case.
[6] The rule appears to be:
"* * * When a trial judge undertakes to define an offense for the conviction of which an accused might be sent to jail, it is the duty of the judge to instruct the jury on the law of the case and to cover each essential element of the offense charged. This responsibility includes the duty to advise the jury regarding lesser included offenses which the record will support." (Emphasis supplied.) Goswick *911 v. State (Fla.), 143 So.2d 817, 819. See, also, Silver v. State (Fla.App.), 174 So.2d 91.
The record of the evidence in this case supports either the crime of rape or assault to commit rape, but not otherwise. The testimony of the prosecutrix and other witnesses for the prosecution and the confession of the Appellant do not support lesser offenses within the crime of rape but only the crime of rape or assault with the intent to commit rape. The Appellant did not take the witness stand before the jury at the trial nor did he present any witnesses in his behalf before the jury. In his confession Appellant admitted getting on top of the victim for the purpose of sexual intercourse, but denied that he penetrated her. Thus there is nothing in the recorded evidence which remotely indicated the Appellant was guilty of only bare assault or assault and battery either directly or by way of any reasonable inference. It follows the record does not support such lesser offenses concerning which Appellant contends it was the duty of the trial judge to instruct. See Silver v. State, supra; Brown v. State (Fla.), 124 So.2d 481; Hand v. State (DCA 1st), 188 So.2d 364, opinion filed June 30, 1966, and Brown v. State (DCA 1st), 191 So.2d 296, opinion filed August 30, 1966.
Point 5. We have carefully reviewed the evidence relating to the admission of the exhibits, viz., the gun, the victim's dress, and the confession, the rulings of the trial judge permitting their admission and the contentions, arguments and authorities of the Appellant that error was committed in allowing admission of these exhibits.
We do not find that harmful or prejudicial error was committed by the trial court in the admission of said exhibits. The confession appeared to have been obtained by the police after first duly warning Appellant of his constitutional rights to remain silent and to have the assistance of legal counsel. The trial judge, out of the presence of the jury, found the confession to have been freely and voluntarily given to the police. See Brown v. State (Fla.App.), 181 So.2d 578.
Nor do we find error in the failure to include the names of two witnesses on the list furnished by the State to the defense. The factual situation in this respect is the same as it was in the Newman case, where we rejected claim of error. The witnesses not listed were F.B.I. agents who made laboratory tests of evidence for the State. The Appellant was furnished a copy of the F.B.I. report of the tests and was thereby put on notice that an F.B.I. agent or agents would in all probability be called to testify as to the laboratory tests made by the agents.
Point 6. In his argument before the jury the State Attorney discussed the theory of capital punishment as a deterrent to crime without objection from the defense. The gist of his remarks was to the effect that the modern theory of capital punishment is that it is not based on the concept of "an eye for an eye," but is applied to deter others from committing the same crime; that if the people generally realize that the punishment for a particular crime is death it will deter them from committing that crime. He concluded by recommending to the jury that it apply capital punishment to Appellant as a deterrent to others who might be tempted to commit rape in Palm Beach County.
The defense counsel in his argument in reply suggested that the jurors from their own personal experience know "that those states that do not have capital punishment. * * *" At this point the State objected on the ground there was no testimony for this argument as to the effect of capital punishment as a deterrent in other states. The trial judge in his instructions to the jury on this objection indicated to the jury their verdict was to be based exclusively upon the evidence received by them in the court room. The State Attorney stated he had no objection to defense counsel arguing the theory of whether capital punishment served as a deterrent, but did object to statistics *912 or facts being given by defense counsel on the question of its deterrent effect in other states. Defense counsel, in view of the trial judge's reiterated ruling that only evidence received in the court room would be the basis for the jury's verdict, did not pursue the matter of the deterrent effect of capital punishment further in his argument.
We do not find harmful error in the court's ruling on this point. Statistical evidence on the question of the deterring or non-deterring effect of capital punishment on the commission of rape in other states would have been a proper predicate for the defense argument, but none was submitted. Therefore, we do not find the court erred in sustaining the objection of the State insofar as statistical data from other states on the point was concerned. There was no objection by the State to theoretical arguments by the defense which did not go outside the evidence before the jury. Nor did the trial court by its rulings preclude such argument.
Point 7. Our reading of the transcript of the evidence leads us to the conclusion there was ample and sufficient evidence, as the jury believed, to convict and no harmful error was committed in the admission of the evidence; nor was the Appellant denied a fair trial.
Point 8. As was stated in Newman v. State, supra, the claim of unequal application generally of F.S. § 794.01, F.S.A., to Negro defendants in rape cases involving white women has been answered adversely by this Court in a number of cases.
Affirmed.
THOMAS, ROBERTS, O'CONNELL and CALDWELL, JJ., concur.
ERVIN, J., concurs with Opinion.
DREW, J., dissents for the reasons set forth in his dissenting opinion in Newman v. State, Fla., 196 So.2d 897, filed this date.
THORNAL, C.J., dissents and agrees with DREW, J., in Newman v. State, Fla., 196 So.2d 897, opinion filed this date.
ERVIN, Justice (concurring).
I agree to the foregoing opinion and judgment. However, as noted in the case of Richard Carter Newman, the appellant here was not given a mercy recommendation, where as another jury recommended mercy for Harold Durell Jones. The fact that the evidence in the instant case discloses that Jones was a joint participant, and the apparent "ringleader", may justify the State Board of Pardons in favorably considering a plea for commutation of sentence to life imprisonment for Appellant, although we have no authority to alter the sentence by substituting our judgment for the determination below.